DAVID GRAFF
CHRISTOPHER AYERS
RACHAEL KIERYCH
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
dgraff@andersonkill.com
cayers@andersonkill.com
rkierych@andersonkill.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EURO PACIFIC CAPITAL INC., individually and in its capacity as Investor Representative and attorney-in-fact for BRUCE WALKER RAVENEL; POM INVESTMENTS; JOSEPH MCCARTHEY IRA; NFS/FMTC SEP FBO CARTER LAREN; NFS/FMTC SEP FBO GERALD MONA; THOMAS L. INGRAM AND CARISSA INGRAM AS TRUSTEES FOR THE INGRAM LIVING TRUST U/A 11/2/05; NFS/FMTC SEP IRA FBO GERALD E. MANWILL; ARNOLD WILLIAM GOLDSCHLAGER AND NORA GOLDSCHLAGER AS TRUSTEES FOR THE GOLDSCHLAGER FAMILY TRUST U/A 6/24/04; JOHN A. RUPP AS TRUSTEE THE JOHN A. RUPP TRUST U/A 3/9/07; WILLIAM A. KARGES JR. AS TRUSTEE FOR THE KARGES REVOCABLE INTERVIVOS TRUST U/A 4/29/85; RICHARD GRIFF AND JACKIE GRIFF; CHRISTIANNA SEIDEL AS TRUSTEE FOR THE CHRISTIANNA SEIDEL PROPERTY TRUST U/A 11/5/99 FBO CHRISTIANNA SEIDEL; KENNETH H. NASS AND MAUREEN NASS AS TRUSTEES FOR THE KENNETH H. & MAUREEN K. NASS CHARITABLE TRUST U/A 6/7/05; DAVID ARITA; AMY J. STEFANIK AS TRUSTEE FOR THE AMY J. STEFANIK REVOCABLE TRUST U/A 2/6/01; STEVEN JAY EPSTEIN; SELWYN ADELSON; SYED HASNAT AHMED; ANDREW MCCOLLAM FOR AM-PER ENTERPRISES; ALMA ARTHUR & WILLIAM BYPASS TRUST; JAMES BACON FOR DOJACON LLC; JEFF BAKER IRA; SARAH J. BASLER LIVING TRUST; RICHARD BENAMY; MIDDLESEX ORTHO 401K; LARRY BERSON; JEFF BLACKBURN; RON | Case No.: 1:15-cv-04410-VM<br><br>**VERIFIED FIRST AMENDED COMPLAINT** |

BOVASSO AND LINDA BOVASSO; JAMIE BROWN; BRAD CARR; LOWELL CERISE; DON CLEMETSON; ROLAND CRAM; ROB DAHLANDER FOR INTEGRITY FUNDS; JONATHAN EDWARDS AND VIRGINIA ADAMS EDWARDS; ART EKLUND; VIC FERRER; ANDREW GARNOCK; BOB HIEMANN; THE KARAN HOSS TRUST; THE HERSCHEL HUNTER TRUST (HACKER); IRA JON KARKOW; DARRELL KLOECKNER; IRA THOMAS LADNER; SCOTT LENNES; GREGG LINHOFF; MADARAZ SEP; DAVID MARBLE; ABBY MARGALITH FOR NORTHERN STAR GROWTH TRUST; STEPHEN MCCARRON PROFIT SHARING PLAN; ROD MCINTYRE; ROTH IRA MARK ROGER MITCHELL; DR. MARK MITCHELL PROFIT SHARING PLAN; MMH GROUP LLC; TIMOTHY NASS; MARY NEIBERG; KEVIN O'NEILL AND SUZANNE O'NEILL; JOSEPH PANELLA; TINA PETERSON; STEVE SANN; PETER SCHORTMANN; KIM SCHWENKE; JAMES SHEAHAN; IRA DONALD SHOFF; IRA CHARLES SULLIVAN; IRA GERALD SURERUS; ABDOLHOSAYN TASLIMI AND SHIDAN TASLIMI; MEHRAN TASLIMI; RUHA TASLIMI AND SHIDAN TASLIMI; SHIDAN TASLIMI; SUSANNE TASLIMI; WAIN WHITE; LAMBERT WU AND CHU WU LIYING JTTEN; LANE YOSHIDA; IRA PAUL ZINK; TRILLION DOLLAR GROWTH; NORTH MILITARY LTD.; CHADDS FORD LTD.; CARLOS A. MERINO AS TRUSTEE FOR THE CARLOS ALFONSO MERINO REVOCABLE LIVING TRUST U/A 12/4/96; MITCHELL MARTIN AND DEBORAH MARTIN; WILLIAM BRADLEY AS ADMINISTRATOR FOR THE BRADLEY ANESTHESIOLOGY PROFIT SHARING PLAN; BRENT PAULGER; KEVIN MOORE; NFS/FMTC IRA FBO ROBERT STEPHEN ADAMS; STEVE HOKE AND COLLEN HOKE AS TRUSTEES FOR THE HOKE LIVING TRUST U/A 4/19/02; NFS/FMTC ROLLOVER IRA FBO LYNN ROLLINS STULL; DAVID W. LARSON AND JENNIFER L. LARSON; JOHN D. SMEAD; BERT HUNTSINGER; DAVID BRISBIN FOR WHITE PINE PRODUCTIONS; NFS/FMTC IRA FBO DIANE D. SPOLUM; NFS/FMTC ROLLOVER IRA FBO RALPH DALE EDSON; WALTER FRIESEN; WILLIAM TEN BRINK AS TRUSTEE FOR THE TEN BRINK TRUST U/A 10/2/86;

| |
|---|
| NFS/FMTC ROLLOVER IRA FBO JAMES A. TAMBORELLO; BARBARA S. MEISTER AS TRUSTEE FOR THE MEISTER NON-EXEMPT MARITAL TRUST U/A 11/17/83; NORMAN S. KRAMER AND LINDA L. KRAMER; MICHAEL BALDWIN; HOLLOW BALFOUR FOR HOPE BASH; IRA PATRICIA BROWNE; SCOTT BURNS; ROBERT CARLSON AND MICHELLE CARLSON; STEVEN CHARLES; JORGE ECHEVERRIA; PHYLLIS ECHT; IRA DON FAGEN; THE ALEXANDER AND YANA GALUZ TRUST; RICHARD HELPPIE; HOWARD HICKINGBOTHAM AND SANDRA HICKINGBOTHAM; ULRICH HONIGHAUSEN AND AMANDA HONIGHAUSEN; AJAY KALRA; PATRICK KIRK AND GLORIA KIRK; SCOTT LANGMACK AND LORI LANGMACK; BRENT MAY; DEEPAK MUNJAL; ROBERT PICKERING AND BRIAN PICKERING; SERP CARL RICE; RUSS RIEDMUELLER AND NICOLE RIEDMUELLER; ROBERT SAYSON AND ALICE SAYSON; THE SPIELMAN AND ELKIN REVOCABLE TRUST; SPONGBOB VENTURES; ROB VECCHIONE; MATTHEW A. WALTON; TIM WEAVER; THE WORTHINGTON (DIPAOLO) FAMILY TRUST; WYMOND INVESTMENTS, LLC; JAYHAWK PRIVATE EQUITY; and DOES 1-100, <br><br>Plaintiff, <br><br>vs. <br><br>BOHAI PHARMACEUTICALS GROUP, INC., <br><br>Defendant. |

Plaintiff Euro Pacific Capital Inc., individually, and in its capacity as Investor Representative and attorney-in-fact ("Plaintiff" or "Euro Pacific") for Bruce Walker Ravenel; POM Investments; Joseph McCarthey IRA; NFS/FMTC SEP FBO Carter Laren; NFS/FMTC SEP FBO Gerald Mona; Thomas L. Ingram and Carissa Ingram as trustees for the Ingram Living Trust U/A 11/2/05; NFS/FMTC SEP IRA FBO Gerald E. Manwill; Arnold William

3

Goldschlager and Nora Goldschlager as trustees for the Goldschlager Family Trust U/A 6/24/04; John A. Rupp as trustee for the John A. Rupp Trust U/A 3/9/07; William A. Karges Jr. as trustee for the Karges Revocable Intervivos Trust U/A 4/29/85; Richard Griff and Jackie Griff; Christianna Seidel as trustee for the Christianna Seidel Property Trust U/A 11/5/99 FBO Christianna Seidel; Kenneth H. Nass and Maureen Nass as trustees for the Kenneth H. & Maureen K. Nass Charitable Trust U/A 6/7/05; David Arita; Amy J. Stefanik as trustee for the Amy J. Stefanik Revocable Trust U/A 2/6/01; Steven Jay Epstein; Selwyn Adelson; Syed Hasnat Ahmed; Andrew McCollam for AM-PER Enterprises; Alma Arthur & William Bypass Trust; James Bacon for Dojacon LLC; Jeff Baker IRA; Sarah J. Basler Living Trust; Richard Benamy; Middlesex Ortho 401k; Larry Berson; Jeff Blackburn; Ron Bovasso and Linda Bovasso; Jamie Brown; Brad Carr; Lowell Cerise; Don Clemetson; Roland Cram; Rob Dahlander for Integrity Funds; Jonathan Edwards and Virginia Adams Edwards; Art Eklund; Vic Ferrer; Andrew Garnock; Bob Hiemann; the Karan Hoss Trust; the Herschel Hunter Trust (HACKER); IRA Jon Karkow; Darrell Kloeckner; IRA Thomas Ladner; Scott Lennes; Gregg Linhoff; Madaraz SEP; David Marble; Abby Margalith for Northern Star Growth Trust; Stephen McCarron Profit Sharing Plan; Rod McIntyre; Roth IRA Mark Roger Mitchell; Dr. Mark Mitchell Profit Sharing Plan; MMH Group LLC; Timothy Nass; Mary Neiberg; Kevin O'Neill and Suzanne O'Neill; Joseph Panella; Tina Peterson; Steve Sann; Peter Schortmann; Kim Schwenke; James Sheahan; IRA Donald Shoff; IRA Charles Sullivan; IRA Gerald Surerus; Abdolhosayn Taslimi and Shidan Taslimi; Mehran Taslimi; Ruha Taslimi and Shidan Taslimi; Shidan Taslimi; Susanne Taslimi; Wain White; Lambert Wu and Chu Wu Liying JTTEN; Lane Yoshida; IRA Paul Zink; Trillion Dollar Growth; North Military Ltd.; Chadds Ford Ltd. (collectively the "Noteholders"); Carlos A. Merino as trustee for the Carlos Alfonso Merino Revocable Living Trust U/A 12/4/96;

4

Mitchell Martin and Deborah Martin; William Bradley as administrator for the Bradley Anesthesiology Profit Sharing Plan; Brent Paulger; Kevin Moore; NFS/FMTC IRA FBO Robert Stephen Adams; Steve Hoke and Collen Hoke as trustees for the Hoke Living Trust U/A 4/19/02; NFS/FMTC Rollover IRA FBO Lynn Rollins Stull; David W. Larson and Jennifer L. Larson; John D. Smead; Bert Huntsinger; David Brisbin for White Pine Productions; NFS/FMTC IRA FBO Diane D. Spolum; NFS/FMTC Rollover IRA FBO Ralph Dale Edson; Walter Friesen; William Ten Brink as trustee for the Ten Brink Trust U/A 10/2/86; NFS/FMTC Rollover IRA FBO James A. Tamborello; Barbara S. Meister as trustee for the Meister Non-Exempt Marital Trust U/A 11/17/83; Norman S. Kramer and Linda L. Kramer; Michael Baldwin; Hollow Balfour for Hope Bash; IRA Patricia Browne; Scott Burns; Robert Carlson and Michelle Carlson; Steven Charles; Jorge Echeverria; Phyllis Echt; IRA Don Fagen; the Alexander and Yana Galuz Trust; Richard Helppie; Howard Hickingbotham and Sandra Hickingbotham; Ulrich Honighausen and Amanda Honighausen; Ajay Kalra; Patrick Kirk and Gloria Kirk; Scott Langmack and Lori Langmack; Brent May; Deepak Munjal; Robert Pickering and Brian Pickering; SERP Carl Rice; Russ Riedmueller and Nicole Riedmueller; Robert Sayson and Alice Sayson; the Spielman and Elkin Revocable Trust; Spongbob Ventures; Rob Vecchione; Matthew A. Walton; Tim Weaver; the Worthington (Dipaolo) Family Trust; Wymond Investments, LLC; Jayhawk Private Equity (collectively the "Shareholders") (Noteholders and Shareholders referred to collectively as the "Investors") and their assignees, by and through their undersigned attorneys, make this Complaint against Defendant Bohai Pharmaceuticals Group, Inc. ("Bohai", "Defendant", or the "Company"), a Nevada Corporation, and allege as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant because of Defendant's continued failure to adhere to the terms of the promissory notes (the "Notes"). Bohai's default and failure to fulfill its obligations under the Notes is a result of bad faith on the part of a foreign entity that went "dark" and completely disregarded its debt obligations to the Investors.

2. Plaintiff also brings this action against Defendant based on its failure to fulfill its obligations under the Securities Purchase Agreement and the Registration Rights Agreement by, *inter alia*, failing to report to the Securities Exchange Commission (the "SEC"), and depriving the Shareholders of a market in which to sell their shares in the Company.

3. Lastly, Plaintiff brings this action because Defendant has engaged in a deceptive scheme or course of conduct to improperly depress the market for its shares so the company can buy back the securities at a lower value in order to take the Company private. Defendant has purposefully engaged in a scheme to benefit itself to the detriment of its shareholders.

## THE PARTIES

4. Plaintiff Euro Pacific Capital Inc. is an investment company incorporated under the laws of the state of California, with its principal place of business in Westport, Connecticut. Euro Pacific is the investor representative, lead placement agent, and attorney-in-fact for the Investors, and authorized to act on their behalf pursuant to Section 2.8 of the Securities Purchase Agreement ("SPA"), wherein the Investors invested in Bohai.

5. Defendant Bohai Pharmaceuticals Group Inc. is a publicly held corporation organized and incorporated under the laws of Nevada. Bohai's registered agent, V Corp Services, LLC, is located at 1645 Village Center Circle, Suite 170, Las Vegas, Nevada 89134. Bohai operates exclusively in the People's Republic of China ("PRC") with its headquarters located in the city of Yantai, Shandong Province, China.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the Defendant is subject to this Court's personal jurisdiction due to the consent to jurisdiction and governing law clauses in the contracts at issue.

## BACKGROUND FACTS

### I. Bohai's Business and Corporate Structure

8. Bohai was incorporated in the State of Nevada under the name Link Resources, Inc. on January 9, 2008 and became a public operating company on January 5, 2010, pursuant to a Share Exchange Transaction.

9. Bohai is engaged in the production, manufacturing, and distribution of herbal pharmaceuticals based on traditional Chinese medicine in the PRC.

10. Bohai conducts its business in the PRC through two operating subsidiaries:

   a. YantaiBohai Pharmaceuticals Group Co., Ltd., a PRC company and Bohai's original operating subsidiary.

   b. YantaiTianzheng Pharmaceuticals Company, Ltd., a PRC company that Bohai acquired effective July 1, 2011, through a newly formed PRC wholly foreign-owned enterprise subsidiary, YantaiNirui Pharmaceuticals, Ltd.

## II. Bohai Used the United States Markets to Raise Capital and then Went "Dark," Thereby Breaching Its Obligations to Report Under the Exchange Act[1].

### A. The Convertible Notes

11. On or about January 5, 2010, Bohai consummated a $12,000,000.00 financing (the "Offering") with the Investors, whereby Bohai issued 6,000,000 units at $2.00 per unit. Each unit consisted of: (a) a $2.00 principal amount, two-year convertible note (collectively, as amended, the "Notes"), and (b) a three-year common stock purchase warrant (the "Warrant") to purchase one share of Bohai's common stock, par value $0.001 at $2.40 per share.

12. Euro Pacific served as lead placement agent, investor representative, and attorney-in-fact for 124 of the 128 purchasers of the Notes, which amounted to $11,100,000.00.

13. The Notes were amended five times, on or about the following dates: December 31, 2011; May 15, 2012; June 27, 2012; December 6, 2012; and April 21, 2014. *Inter alia*, the amendments extended the maturity date of the Notes and inflated Bohai's ability to incur debt, incur liens, or make capital expenditures.

14. Pursuant to Section 2 of the Notes, Bohai was required to repay the "outstanding principal amount and accrued and unpaid Interest" by the Maturity Date, unless Euro Pacific and Bohai agree to extend the Maturity Date. The current Maturity Date of the Notes is stated as April 5, 2016.

15. Interest on the Notes "shall accrue on the unpaid principal amount of this Note from the date hereof [January 5, 2010] until such principal amount is repaid in full at the rate of eight percent (8%) per annum, payable quarterly in arrears on the [Bohai's] [] day of each fiscal quarter."

---

[1] Exchange Act of 1934 ("Exchange Act").

8

16. Section 5(a) of the Notes sets forth in pertinent part the method in which the Investors' may convert their note-holding positions to share-holding positions:

> (i) <u>Optional Conversion</u>. Each holder of the Notes shall have the right, exercisable at any time prior to the Maturity Date, to convert all, but not less than all, of the principal amount then outstanding (including any accrued but unpaid interest thereon) into shares of the Company's common stock, par value $0.001 per share (the "Common Stock") at a conversion price equal to $2.00 per share (the "Conversion Shares").

17. Section 6 of the Notes concerning the Events of Default, states, in pertinent part:

> (a) <u>Non-Payment</u>. The Company shall default in the payment of the principal of, or accrued interest on, this Note as and when the same shall become due and payable, whether by acceleration or otherwise; or
>
> (b) <u>Default in Covenants</u>. The Company shall default in any material manner in the observance or performance of the affirmative or negative covenants or agreements set forth in the SPA, this Note or that certain Registration Rights Agreement, dated of even date herewith, between the Holder [the Investors] and the Company (collectively, the "Transaction Documents");
>
> (c) <u>Breach of Representations and Warranties</u>. The Company materially breaches any representation or warranty contained in the Transaction Documents; or
>
> (d) <u>Exchange Act or Exchange Requirements</u>. Any termination of registration or suspension of the Company's reporting obligations under the Exchange Act or suspension from trading on the OTCBB[2] (or any exchange on which the Common Stock is traded or listed for quotations (it being agreed that the delisting of the Common Stock from any national exchange shall not be an Event of Default if the Common Stock is, within ten (10) Business Days of the effective date of such delisting, quoted on the OTCBB), or the Company's failure to file reports with the SEC on a timely basis as required by the Exchange Act.

18. Section 11 of the Notes also provide that "The Company agrees that, in the event of an Event of Default, to reimburse the Holder [the Investors] for all reasonable costs and

---

[2] That is, the Over-The-Counter Bulletin Board.

9

expenses (including reasonable legal fees of one counsel) incurred in connection with the enforcement and collection of this Note."

### B. The Securities Purchase Agreement

19. Simultaneous with the execution of the Notes, on or about January 5, 2010, the Investors, together with Euro Pacific as the investor representative and lead placement agent and attorney-in-fact for the Investors, entered into the SPA with Bohai, which governed the purchase of the Notes.

20. Subsequent to the execution of the Notes and the SPA, Shareholders exercised their rights in accordance with Section 5(a)(i) and converted their noteholding positions into equity-positions in Bohai.

21. The SPA defines "Securities" as "the Units, the Notes, the Conversion Shares, the Warrants and the Warrant Shares."

22. Section 8.2 of the SPA contains salient provisions which pertain to Bohai's obligation to report to the Securities and Exchange Commission, including in pertinent part that "As long as any Investor owns the Securities, the Company covenants to timely file (or obtain extensions in respect thereof and file within the applicable grace period) all reports required to be filed by the Company after the date hereof pursuant to the Exchange Act."

23. The SPA also sets forth certain Remedies, stating in Section 9.13 that "[i]n addition to being entitled to exercise all rights provided herein or granted by law, including recovery of damages, each of the Investors and the Company will be entitled to specific performance under the Transaction Documents."

### C. The Registration Rights Agreement

24. Also, on or about January 5, 2010, and in accordance with Section 6.13 of the SPA, Bohai and the Investors entered the Registration Rights Agreement (the "RRA").

10

25. Similar to the SPA, the RRA contains provisions pertaining to Bohai's obligation to report, stating in Section 8 as follows:

> Reports Under the 1934 Act. With a view to making available to the Investors the benefits of Rule 144 or any other similar rule or regulation of the SEC that may at any time permit the Investors to sell securities of the Company to the public without registration, the Company agrees, for so long as Registrable Securities are outstanding, to:
>
> > (a) make and keep public information available, as those terms are understood and defined in Rule 144;
> >
> > (b) file with the SEC in a timely manner all reports and other documents required of the Company under the 1933 Act and the 1934 Act so long as the Company remains subject to such requirements and the filing of such reports and other documents is required for the applicable provisions of Rule 144; and
> >
> > (c) furnish to each Investor so long as such Investor owns Registrable Securities, promptly upon request, such information as may be reasonably and customarily requested to permit the Investors to sell such securities pursuant to Rule 144 without registration.

## III. Bohai's "Going Dark" Was a Default of the Terms of the Notes, SPA, and RRA

26. Subsequent to the execution of the SPA and the issuance of the Notes, Bohai ceased filing with the SEC. The last document Bohai filed was a 10-Q Quarterly Report on or about November 14, 2014, for the quarter ending September 30, 2014.[3] Bohai has refused to provide any reports either publically, to Euro Pacific, or to the Investors, in derogation of its duties set forth in the Notes, the SPA, and the RRA (the "Transaction Documents").

27. On or about February 12, 2015 and, again, on or about February 17, 2015, Euro Pacific requested information concerning Defendant's failure to file its 10-Q filing and urged the company to reconsider continuing to properly file with the SEC as required.

---

[3] Bohai filed a 10-K/A on November 25, 2014 "to remove the unexecuted audit report of Marcum Bernstein & Pinchuk LLP [] for the fiscal year ended June 30, 2013 included in the Form 10-K, and to label the financial statements for the fiscal year ended June 30, 2013, as unaudited."

11

28. On or about February 17, 2015, Bohai informed Euro Pacific that it stopped reporting to the SEC for the improper purpose of speeding up "the go private process."

29. On or about March 12, 2015, Euro Pacific in its capacity as investor representative, lead placement agent, and attorney-in-fact for the Investors made a demand via letter to Bohai that it disclose its books, financial statements, records, and material financial information to shareholders for valuation. No such action has been taken by Bohai.

30. As a result of Bohai's "going dark," Bohai has failed to issue the required payments to the Noteholders and defaulted in accordance with the Notes. Accordingly, the Noteholders have been unable to recoup the monies due and owing on the Notes.

31. The sections of the SPA and RRA that obligate Bohai to report are designed to ensure that a market exists for the issued securities and that the securities themselves are transferable. Bohai's failure to report not only deprives the Shareholders of the ability to ascertain the present fair value of their equity holdings, but also deprives other market participants of the same. Bohai's breach of its reporting obligations and covenants under the SPA and RRA has caused the complete illiquidity of the issued securities due to market participants' inability to ascertain the present fair value of the Company's shares.

32. As a result of Bohai "going dark," the Shareholders are deprived of a market to sell their investment, as any decision to buy, sell, or hold by all market participants is rendered impossible.

33. Incredibly, in "going dark" and refusing to disclose its financial and operational information, Defendant acted with the intent to maliciously act to the detriment of Plaintiff by destroying the market for its shares – devaluing their securities – for Defendant's own financial gain.

34. Indeed, Defendant has engaged in this deceptive scheme or course of conduct to improperly depress the market for its shares so the company can buy back the securities at a lower value in order to take the Company private.

### IV. Injury to Euro Pacific

35. As a result of Defendant's breach of the SPA by, *inter alia*, failing to report its financials and "go dark", Plaintiff Euro Pacific suffered damages. Namely, as discussed in greater detail below, Plaintiff Euro Pacific was damaged as a result of Defendant's actions (and inactions), as it suffered business losses, reputational harm, and incurred substantial attorney fees and costs for Defendant's tortious breach.

36. Euro Pacific invested a substantial amount of time and money in acting as the Investor Representative for its clients or Shareholders in this investment in Bohai. Euro Pacific made these investments in research, due diligence, consulting, and development and marketing.

37. Additionally, as a result of Defendant's breach of the SPA, Euro Pacific suffered damage to its reputation within the investment industry as shown through a loss of business from aggrieved customers following the breach. Moreover, intangible assets such as brand name, intellectual capital, unique market position, and established networks comprise exceptionally important assets to Euro Pacific.

38. Euro Pacific has built its goodwill upon, *inter alia*, its customer base, client relations, reputation for solid investment strategy along with the reputation of Peter Schiff within the media and finance industry. Mr. Schiff is Euro Pacific's CEO and Chief Global Strategist, as well as its public figurehead. The goodwill and reputation of broker-dealers and investment professionals are intrinsically valuable, especially in Euro Pacific's case when it comes to international investments.

39. Euro Pacific's and Peter Schiff's goodwill and concomitant reputation have been detrimentally affected and tarnished by the breach of the SPA. This is particularly salient for this matter concerning international investments, as it is closely tied to Euro Pacific and Mr. Schiff's recognized expertise, sophistication and status in the finance industry.

### FIRST CAUSE OF ACTION
### (EURO PACIFIC AND THE NOTEHOLDERS –
### BREACH OF CONTRACT )

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. On or about January 5, 2010, Euro Pacific, the Investors, and Bohai executed and entered into the Notes.

42. Euro Pacific and the Noteholders have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of the Notes, including, *inter alia*, investing $12,000,000.00 in the Company.

43. Defendant breached the Transaction Documents by failing and refusing to report to the SEC under the Exchange Act, or otherwise reporting to the Noteholders and the public.

44. The Defendant has indicated it will not perform its obligations under the Notes by "going dark" and thus will fail to issue the required payments to the Noteholders.

45. As a result of Defendant's breach of contract, Euro Pacific and the Noteholders have suffered and will continue to suffer damages.

46. Bohai's breach of contract with the Noteholders has actually and proximately caused damage to the Noteholders in the amount of $4,987,088 together with interest thereon, and all reasonable costs and expenses, including attorney fees, incurred in connection with the enforcement and collection of the Notes.

## SECOND CAUSE OF ACTION
## (EURO PACIFIC AND THE SHAREHOLDERS –
## BREACH OF CONRACT)

47. Plaintiff repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48. On or about January 5, 2010, Euro Pacific, the Investors, and Bohai executed and entered into the Transaction Documents.

49. Shareholders exercised their rights under the Transaction Documents and converted their Notes to shares in Bohai.

50. *Inter alia*, the Defendant breached the Transaction Documents by failing and refusing to report to the SEC under the Exchange Act, or otherwise reporting to the Shareholders and the public.

51. The Defendant's breach of its reporting obligations has divested the Shareholders of their ability to ascertain the fair market value of their investment, thereby rendering any decision to buy, sell, or hold impossible. Similarly, as Bohai ceased reporting to the SEC, other market participants cannot value their potential investments, thereby also rendering their ability to enter into transactions impossible. As a result, no market exists for the Shareholders to exit their investment, and they are left with illiquid and non-transferable shares in Bohai.

52. As a result of the Defendant's breach of the Transaction Documents, Euro Pacific and the Shareholders have suffered and will continue to suffer damages.

53. The Defendant's breach of the Transaction Documents has actually and proximately caused damage to Euro Pacific and the Shareholders in at least $1,000,000.

54. Additionally, as a result of the Defendant's breach of the Transaction Documents, Euro Pacific and the Shareholders are entitled to Bohai's books and records.

15

55. Furthermore, as a result of the Defendant's breach of the Transaction Documents, the Shareholders are entitled to an option to "put" their shares at fair market value.

### THIRD CAUSE OF ACTION
### (INVESTORS –BREACH OF COVENANT)

56. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57. As more particularly set forth above, the Defendant covenanted in the Transaction Documents that the Company would timely file all reports required to be filed under the Exchange Act and Rule 144.

58. The Defendant breached the covenants in the Transaction Documents, *inter alia*, by failing and refusing to report to the SEC under the Exchange Act, as Bohai's last financial report filed with the SEC was the 10-Q for the quarter ending September 30, 2014.

59. As a result of the Defendant's breach of its reporting covenant in the Transaction Documents, Euro Pacific and the Investors have suffered, and will continue to suffer, irreparable injury in that, *inter alia*, the Investors cannot ascertain the fair market value of their investment and no market exists for them to exit their investment; thus, they cannot recoup the monies due and owing.

60. As a result of Bohai's breach of its reporting covenant in the Transaction Documents, Euro Pacific and the Investors are entitled to a mandatory injunction requiring Bohai to report to the SEC under the Exchange Act pursuant to the SPA.

### FOURTH CAUSE OF ACTION
### (EURO PACIFIC AND THE INVESTORS - DEFENDANT'S BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

61. Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

62. All contracts governed by the State of New York include an implied covenant of good faith and fair dealing.

16

63. As Investor Representative and attorney-in-fact of all Investors, Euro Pacific is heavily dependent on the level of success and satisfaction of its clients—i.e. the Investors.

64. The success and satisfaction of the investments derived from the SPA directly impacts Euro Pacific's ability to generate a profit from its investor clients.

65. As more particularly set forth above, the Defendant breached the covenant of good faith and fair dealing implicit in the SPA, by engaging in a deceptive scheme or course of conduct to depress the market for its shares so the company can buy back the securities at a lower value in order to take the Company private. The idea that the Defendant would engage in a scheme to benefit itself to the detriment of its shareholders is the essence of a breach of covenant of good faith and fair dealing.

66. Defendant acted with the intent to maliciously act to the detriment of Plaintiff by destroying the market for its shares – devaluing their securities – for Defendant's own financial gain.

67. *Inter alia*, the Defendant's breach of the covenant of good faith and fair dealing has prevented the Shareholders from receiving the benefits of the SPA and their conversionary shares because the Company's common stock obtained by the Shareholders is now illiquid and no market exists for these securities.

68. As a result of the Defendant's breach of the covenant of good faith and fair dealing implicit in the SPA, Euro Pacific and the Investors have suffered and will continue to suffer damages.

69. Bohai's breach has actually and proximately caused damages to the Noteholders in the amount of $4,987,088 together with interest thereon, and all reasonable costs and

17

expenses, including attorney fees, incurred in connection with the enforcement and collection of the SPA.

70. Bohai's breach has also actually and proximately caused Euro Pacific and the Investors to suffer damages in at least $1,000,000.00. Namely, Euro Pacific was damaged as a result Defendant's actions (and inactions), as it suffered business losses, reputational harm, and incurred substantial attorney fees and costs directly caused by Defendants' breach.

71. Due to Bohai's breach of the covenant of good faith and fair dealing, Euro Pacific and the Shareholders are entitled to Bohai's books and records.

72. Furthermore, as a result of Bohai's breach, the Shareholders are entitled to an option to "put" their shares at fair market value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Enter a judgment in Euro Pacific's favor on all counts of this Complaint;

2. Award Euro Pacific, in its capacity as Investor Representative and attorney-in-fact for the Investors, damages in the amount of $4,987,088 plus compensatory damages and interest thereon on Counts I and IV of this Complaint;

3. Award Euro Pacific, individually, damages for all their business losses and reputational damages plus interest in the amount of at least $1,000,000.00 on Count IV of this Complaint;

4. Award Euro Pacific, in its capacity as Investor Representative and attorney-in-fact for the Shareholders, an option to "put" their shares in Bohai at fair market value on Counts II and IV of this Complaint;

5. Direct Bohai to provide Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Investors, with copies of the books and records for inspection in New York on Counts II and IV of this Complaint;

6. Grant a mandatory injunction requiring Bohai to report under the Exchange Act pursuant to the Transaction Documents on Count III of the Complaint;

7. Award Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Investors, attorney fees and costs incurred herein; and

8. Award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated: September 10, 2015
New York, New York

ANDERSON KILL P.C.

David Graff, Esq.
Christopher L. Ayers, Esq.
Rachael Kierych, Esq.
dgraff@andersonkill.com
cayers@andersonkill.com
rkierych@andersonkill.com
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000
Attorney for Plaintiff

## VERIFICATION OF COMPLAINT

STATE OF CONNECTICUT )
                     ) SS
COUNTY OF FAIRFIELD  )

Peter Chema hereby affirms under penalty of perjury as follows:

1. I am authorized by the Euro Pacific Capital Inc. to execute, and am executing, this verification on behalf of the Euro Pacific Capital Inc.

2. I have read the foregoing Verified First Amended Complaint, and the facts recited therein are true and correct to the best of my knowledge, information, and belief.

_____
Peter Chema

AFFIRMED TO AND SUBSCRIBED before me this 10th day of September, 2015

_____
Notary Public

Marion Lanice Miller
Notary Public
My Commission Expires Sept. 30, 2017

20

nydocs1-1055027.3