UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EURO PACIFIC CAPITAL INC., individually and in its capacity as Investor Representative and attorney-in-fact for BRUCE WALKER RAVENEL, et.al.,<br><br>                         Plaintiff,<br><br>vs.<br><br><br>BOHAI PHARMACEUTICALS GROUP, INC.,<br><br>                         Defendant. | Case No.:  1:15-cv-04410-VM |

## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION

ANDERSON KILL P.C.

David Graff, Esq.
Christopher L. Ayers, Esq.
Rachael Kierych, Esq.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ..............................................................................2

I.     The Transaction Documents Forum Selection Clause ..........................................2

II.    Bohai's Bad Faith and Breach of Implied Covenant ............................................6

ARGUMENT ............................................................................................8

I.     This Action Is Not Subject To The Arbitration Agreement In The Fund
       Escrow Agreement....................................................................................8

       A.     There Is No Intent To Enter An Arbitration Agreement In
              Enforcement Of The Notes And Relevant Transaction Document,
              And Thus The Claims Fall Outside The Scope Of The FEA's
              Arbitration Clause ........................................................................9

       B.     The FEA Is An Unrelated Ancillary Document Part Of A Separate
              Transaction..................................................................................11

       C.     The FEA Does Not Supersede The Parties' Earlier Forum Selection
              Clause Nor The Subsequent Forum Selection Clauses ...........................13

II.    The Third and Forth Causes of Action Should Not Be Dismissed Because
       Plaintiff's Sufficiently Pled Facts to Satisfy A Motion To Dismiss Pursuant
       To Fed. R. Civ. 12(B)(6) .........................................................................14

       A.     Legal Standard ............................................................................14

       B.     The Breach Of Implied Covenant Of Good Faith And Fair Dealing Is
              Not Duplicative Because It Relies On Different Facts Than The
              Breach Of Contract Claim................................................................15

       C.     The Breach Of Covenant Is Likewise Not Duplicative or Redundant........17

CONCLUSION........................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Anderson v. Docuport, Inc.,*
    No. 06-civ-3769, 2007 U.S. Dist. Lexis 10106 (S.D.N.Y. Feb. 13, 2007)...................13

*Applied Energetics, Inc. v. Newoak Capital Mkts.,*
    LLC, 645 F.3d 522 (2d Cir. 2011)............................................................................13

*Ari & Co. v. Regent Int'l Corp.,*
    273 F. Supp. 2d 518 (S.D.N.Y. 2003).......................................................................15

*Arthur v. Jones Chems., Inc.,*
    94-CV-6200L, 1995 U.S. Dist. LEXIS 22507 (W.D.N.Y. Mar. 13, 1995)...............9, 10

*Ben-Reuven v. Kidder Peabody & Co.,*
    526 N.Y.S.2d 752 (Sup. Ct. 1988)...........................................................................10

*Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank,*
    524 N.Y.S.2d 531 (App. Div. 1988) ..........................................................................17

*China Auto CareaChina Auto Care, LLC v. China Auto Care (Caymans),*
    859 F. Supp. 2d 582 (S.D.N.Y. 2012)..........................................................................8

*Creative Sec. Corp. v. Bear Stearns & Co.,*
    671 F. Supp. 961 (S.D.N.Y. 1987), *aff'd without opinion,* 847 F.2d 834 (2d Cir.
    1988) ........................................................................................................................10

*Dalton v. Educ. Testing Serv., Inc.,*
    663 N.E.2d 289 (N.Y. 1995) ....................................................................................16

*Harris v. Provident Life & Acc. Ins. Co.,*
    310 F.3d 73 (2d Cir. 2002) ......................................................................................15

*Hunt, Ltd. v. Lifschultz Fast Freight, Inc.,*
    889 F.2d 1274 (2d Cir. 1989) ....................................................................................9

*Kahn v. N.Y. Times Co.,*
    503 N.Y.S. 2d 561 (App. Div. 1986) ........................................................................17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) ..................................................................................................8

*Sea Spray Holdings, Ltd. v. Pali Fin. Group., Inc.,*
    269 F. Supp. 2d 356 (S.D.N.Y. 2003).......................................................................12

iii

*Shearson/American Express v. McMahon*,
    482 U.S. 220 (1987) ................................................................................8

*Sikarevich Family, L.P. v. Nationwide Mut. Ins. Co.*,
    30 F. Supp. 3d 166 (E.D.N.Y. 2014) ......................................................14

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006) ...................................................................16

## OTHER AUTHORITIES

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ...................................................8

H.R. Rep. No. 96, 68th Cong., 1st Sess. (1924) ..............................................8

iv

Plaintiff Euro Pacific Capital Inc. ("Plaintiff" or "Euro Pacific"), by and through its attorneys, Anderson Kill P.C., respectfully submit this Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss or Stay and Compel Arbitration.  In support of this Opposition, Plaintiff incorporates and relies upon the accompanying affidavit of Peter Chema, Esq.

## **PRELIMINARY STATEMENT**

Misstatements of fact, overactive hyperbole, and strained arguments from Defendant Bohai Pharmacueticals Group, Inc. ("Bohai" or "Defendant") do not constitute actual credible evidence.  Despite Bohai's erroneous contention that an arbitration provision in an agreement to which Bohai was not a party and which is not at issue in this litigation should somehow govern the dispute, the reality is that the jurisdictional and forum provisions set forth in the promissory notes and each of the five (5) extensions from 2010 through 2014 clearly and unambiguously require that any disputes between Euro Pacific and Bohai be resolved in New York courts applying New York law.  Bohai's attempt to remove this litigation to an arbitration forum in China without basis in law or fact – under the belief that it would receive a "hometown" advantage – is yet another instance of Bohai's bad faith conduct and should not be well received by this Court.  Unsurprisingly (given Defendant's misconduct to date), Bohai failed to even mention the arbitration provision in its pre-motion to dismiss letter required by the Court's rules; instead, it simply stated:  "Additionally, in reviewing all the relevant contractual agreements among the parties, we believe the Court is an inappropriate forum for the resolution of these matters."

In this action, Plaintiff brought claims against Bohai because of Defendant's continued failure to adhere to the terms of the promissory notes and related

transaction documents.  It is indisputable that Bohai has defaulted on the promissory notes and failed to comply with contractual obligations.  In addition to and separate from its breach of the promissory notes, Bohai has "gone dark" in a blatant attempt to hide behind a wall in China and completely disregard its obligations to its Euro Pacific investors in bad faith.  For this reason, Euro Pacific has brought claims against Bohai, in addition to its breach of contract claim, for breach of covenant and breach of implied covenant of good faith and fair dealing.  Based upon Defendant's misconduct, it is clear that the purpose and intent of Bohai's fraudulent and deceptive scheme to "go dark" was to devalue the company so that it could take the company private and abscond with millions of U.S. investors' funds.  This scheme occurs in addition to and separate from Bohai's default under the promissory note, as such the claims for breach of covenant and implied covenant of good faith and fair dealing should survive a motion to dismiss.

Simply put, this Court should deny Defendant's Motion to Dismiss and Compel Arbitration, as it lacks any merit in law or fact.

## STATEMENT OF FACTS

### I.     The Transaction Documents Forum Selection Clause

On or about January 5, 2010, Bohai consummated a $12,000,000.00 financing with the Investors ("Investors" include both Noteholders and Shareholders), whereby Bohai issued 6,000,000 units at $2.00 per unit.  Each unit consisted of: (a) a $2.00 principal amount, two-year convertible note (collectively, as amended, the "Notes"), and (b) a three-year common stock purchase warrant (the "Warrant") to purchase one share of Bohai's common stock, par value $0.001 at $2.40 per share. See Amended Complaint, Docket No. 13 (hereinafter "Am. Compl.") at ¶ 11.  A copy of the Notes is attached as **Exhibit 1** to the Chema Affidavit (hereinafter "Chema Aff.").

2

Simultaneously, the parties also entered into a Securities Purchase Agreement ("SPA")

and a Registration Rights Agreement ("RRA"). *Id.* at ¶ 19, 24. Attached to the Chema

Aff. as **Exhibit 2** and **Exhibit 3** are the SPA and RRA, respectively. The SPA, RRA and

Notes, make up the "Transaction Documents." Euro Pacific served as lead placement

agent and investor representative for the investors in the transaction. *Id.* at ¶ 12. The

Transaction Documents all contain the same, or substantially the same, forum selection

clause. Specifically, the original Notes provide the following forum:

> Each party agrees that all legal proceedings concerning the
> interpretations, enforcement and defense of the transactions
> contemplated by this Note (whether brought against a party
> hereto or its respective affiliates, directors, officers,
> shareholders, employees or agents) shall be commenced
> exclusively in the state and federal courts sitting in the City
> of *New York*. Each party hereto hereby irrevocably submits
> to the exclusive jurisdiction of the state and federal courts
> sitting in the City of *New York, New York* for the
> adjudication of any dispute hereunder or in connection
> herewith or with any transaction contemplated hereby or
> discussed herein (including with respect to the enforcement
> of this Note, and hereby irrevocably waives, and agrees not
> to assert in any suit, action or proceeding, any claim that it is
> not personally subject to the jurisdiction of any such court,
> that such suit, action or proceeding is improper . . . .

*See* Notes Section 17 at Chema Aff. **Exhibit 1** (emphasis added); *see also* RRA Article

11(e) Chema Aff. **Exhibit 3** (emphasis added), SPA Article 9.1 Chema Aff. **Exhibit 2**

(emphasis added). By these jurisdictional and forum provision, the parties intended to

bring all legal disputes arising between them to the courts sitting in New York, New York

and apply New York Law. *See* Chema Aff. ¶ 12.

Subsequent to the execution of the Transaction Documents, Bohai

defaulted on Maturity Date in the original Notes. Because of the company's inability to

make payments by the maturity date, the Notes were extended five (5) times. The First

3

Amendment occurred on or about December 31, 2011, which extended the Maturity

Date to April 5, 2012. *Id.* ¶ 15, **Exhibit 4** attached thereto. The First Amended Note

contained a forum selection clause substantially the same as the Transaction

Documents:

> Each party agrees that all legal proceedings concerning the
> interpretations, enforcement and defense of the transactions
> contemplated by this Amendment (whether brought against
> a party hereto or its respective affiliates, directors, officers,
> shareholders, employees or agents) shall be commenced
> exclusively in the state and federal courts sitting in the City
> of *New York*. Each party hereto hereby irrevocably submits
> to the exclusive jurisdiction of the state and federal courts
> sitting in the City of *New York, New York* for the
> adjudication of any dispute hereunder or in connection
> herewith or with any transaction contemplated hereby or
> discussed herein (including with respect to the enforcement
> of this Note, and hereby irrevocably waives, and agrees not
> to assert in any suit, action or proceeding, any claim that it is
> not personally subject to the jurisdiction of any such court,
> that such suit, action or proceeding is improper . . . .

*Id.* at ¶ 16 (emphasis added).

Despite reporting sufficient funds to pay off the Notes, Bohai failed to meet

the April 5, 2012 Maturity Date. Based on Bohai's representations that regulations

enacted in China prevented them from transferring the funds out of China, on or about

May 8, 2012, Euro Pacific entered into the Three Parties Fund Escrow Agreement

("FEA") with Yantai Shencoajishi Pharmaceuticals Co., Ltd. ("Shencoajishi") and Rural

Credit Cooperative of Laisham District, Yantai City ("Escrow Bank") for the purpose of

depositing certain funds ("Escrow Funds") for the payment of the Notes. *Id.* at ¶ 18,

**Exhibit 5**. Although Shencoajishi is a China subsidiary of Bohai, Bohai is not a party to

the FEA Agreement. Since the FEA concerned the Escrow Bank (a Chinese bank with

no foreign presence) and its management of the Escrow Funds, Euro Pacific,

4

Shencoajishi, and the Escrow Bank agreed to resolve disputes over the FEA in a

Chinese forum.  In pertinent part, the FEA states:

> Any dispute arising from and related to this Agreement shall
> be resolved through the negotiation between Party A, Party
> B, and Party C. If the parties fail to resolve the disputes upon
> negotiations, they agree to resolve them in the manner
> stipulated in item (1) below:
>
> Applying to China International Economic and Trade
> Arbitration Commission Shanghai Branch for arbitration.

*Id.* at **Exhibit 5**.  The FEA specifically defines the "Agreement" as "this [FEA], exhibits

thereof, and any amendments, modifications and supplements to this Agreement and

exhibits." *Id.* at Definition 1.  It cannot be reasonably disputed that the arbitration clause

designating a Chinese arbitration forum was for the protection of the Escrow Bank. *Id.*

at ¶ 20.  The Escrow Bank has no presence in the United States and did not want to be

subject to a U.S. forum. *Id.*  It also cannot be reasonably disputed that the FEA did not

replace, supplement, modify, or otherwise amend Bohai's obligation under the Notes—

nor could it have, as Bohai was not a signatory to the FEA.

Subsequent to the Execution of the FEA, Euro Pacific and Bohai entered

into four (4) additional amendments to the Notes executed on the following dates: May

15, 2012; June 27, 2012; December 6, 2012; and April 21, 2014. *Id.* at ¶¶ 21- 28,

**Exhibits 6, 7, 8, 9 and 10**.  These amendments, *inter alia*, extend the Maturity Date of

the Notes due to Bohai's inability to meet their payment obligations.  Section 7 of all of

the Amendments contains the same forum selection clause designating the courts of

New York, New York as the proper forum for all legal proceedings to enforce the Notes:

> Each party agrees that all legal proceedings concerning the
> interpretations, enforcement and defense of the transactions
> contemplated by this Amendment (whether brought against
> a party hereto or its respective affiliates, directors, officers,

5

> shareholders, employees or agents) shall be commenced
> exclusively in the state and federal courts sitting in the City
> of **New York**. Each party hereto hereby irrevocably submits
> to the exclusive jurisdiction of the state and federal courts
> sitting in the City of **New York, New York** for the
> adjudication of any dispute hereunder or in connection
> herewith or with any transaction contemplated hereby or
> discussed herein (including with respect to the enforcement
> of this Note, and hereby irrevocably waives, and agrees not
> to assert in any suit, action or proceeding, any claim that it is
> not personally subject to the jurisdiction of any such court,
> that such suit, action or proceeding is improper . . . .

*Id.* (emphasis added).

Subsequent to the execution of the Transaction Documents, because of

Bohai's inability to fulfill its obligations pursuant to the Notes, certain Noteholders

exercised their rights in accordance with Section 5(a)(i) of the Notes and converted their

note holding position into equity-positions in Bohai ("Shareholders"). Am. Compl. at

¶ 20. The Transaction Documents contain certain specific events of default, *inter alia*,

default of the covenants set forth in the SPA and RRA. *Id.* at ¶ 17. In particular, SPA

and RRA require that Bohai must make all required reporting obligations to the

Securities Exchange Commission ("SEC"). *Id.* at ¶ 25.

## II.    Bohai's Bad Faith and Breach of Implied Covenant

Subsequent to the execution of the SPA and the issuance of the Notes,

Bohai ceased filing with the SEC. Am. Compl. ¶ 26. The last document Bohai filed was

a 10-Q Quarterly Report on or about November 14, 2014, for the quarter ending

September 30, 2014. The 10-Q filed with the SEC indicates that the company

maintains over $202 million in assets, including approximately $27 million in cash and

another $7.75 million cash remaining in the Escrow Account. *See* Chema Aff.

**Exhibit 11,** Form 10-Q for the quarterly period ended September 30, 2014 at page 5,

6

13.  The 10-Q also reveals that Bohai maintained a net income over $9 million for the three months ending September 30, 2015. *Id.* at 6.

Despite "going dark" by refusing to file with the SEC, Euro Pacific still encouraged Bohai to maintain its obligations with the SEC or provide company information to the Investors.  On or about February 12, 2015 and, again, on or about February 17, 2015, Euro Pacific requested information concerning Defendant's failure to file its 10-Q filing and urged the company to reconsider continuing to properly file with the SEC as required.  Am. Compl. ¶ 27, *see* Chema Aff. **Exhibit 12**, email chain with Bohai.  On or about February 17, 2015, Bohai informed Euro Pacific that it stopped reporting to the SEC to speed up "the go private process." *Id.* at ¶ 28.  Euro Pacific later demanded Bohai disclose its books and records to the Shareholders; Bohai refused. *Id.* at ¶ 29, *see* Chema Aff. **Exhibit 13**, March 12, 2015 email.

Because Bohai has refused to provide any reports either publically, to Euro Pacific, or to the Investors, Bohai is in default of the Transaction Documents. *Id.* at ¶ 30.  This default and failure to fulfill its obligations under the Notes is a result of bad faith on the part of a foreign entity to go "dark" and completely disregard its debt obligations to its Investors, or alternatively, intentionally deprive the Shareholders of a market in which to sell their shares so the company can buy back the securities at a lower value in order to take the company private. *Id.* at ¶ 33.  Bohai's failure to report not only deprived Investors of the ability to ascertain the present fair value of their equity holdings, but also deprived other market participants of the same. *Id.* at ¶¶ 31, 32.  Thus, Bohai's breach of its reporting obligations and covenants under the SPA caused

7

the complete illiquidity of the issued securities due to market participants' inability to ascertain the present fair value of the Bohai's shares.

## ARGUMENT

**I.    This Action Is Not Subject To The Arbitration Agreement In The Fund Escrow Agreement.**

There is no question that arbitration can be a fantastic forum and federal policy dictates a favor of arbitral dispute resolutions, where the parties agree to do so. However, neither Euro Pacific nor Bohai agreed to arbitrate a dispute arising from the obligations under the Notes. Indeed, the parties did the opposite – they expressly agreed to resolve all disputes in the court of New York, New York and governed by New York law. It is well established that arbitration is a creature of contract. Federal Arbitration Act, 9 U.S.C. § 1 et seq. The Act "place[s] arbitration agreements upon the same footing as other contracts." *Shearson/American Express v. McMahon*, 482 U.S. 220, 225-226 (1987), quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974); *see also*, H.R. Rep. No. 96, 68th Cong., 1st Sess. (1924). Arbitration agreements are "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967). Thus, the individual Transaction Documents – the Notes, SPA, and RRA – should all be placed on the same footing as other contracts. One contract cannot supersede or otherwise replace another simply because it contains an arbitration agreement because "no party may be required to submit to arbitration any dispute that it has not agreed to arbitrate" – especially, as is the case here, when the FEA does not speak to the parties' obligations under the Notes and Bohai is not even a signatory to the agreement. *See China Auto CareaChina Auto Care, LLC v. China Auto Care (Caymans)*, 859 F. Supp. 2d 582, 585 (S.D.N.Y. 2012).

8

The matters at issue and the facts in this action alleged only pertain to the enforcement and breach of the Notes, SPA, and RRA.  The Transaction Documents do not contain any arbitration provision, as such there is no relevant contract to create an arbitration forum.  Simply put, the FEA is inapplicable and Bohai's attempt to compel arbitration must fail.  The parties expressly agreed to this Court's jurisdiction.

## A.  There Is No Intent To Enter An Arbitration Agreement In Enforcement Of The Notes And Relevant Transaction Document, And Thus The Claims Fall Outside The Scope Of The FEA's Arbitration Clause

"The FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties." *Arthur v. Jones Chems., Inc.*, 94-CV-6200L, 1995 U.S. Dist. LEXIS 22507, *7-8 (W.D.N.Y. Mar. 13, 1995); citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). "As with any question concerning contract interpretation, the starting point is the expressed intent of the parties as manifested by the clear language of the contract." *Id.* It is proper to look to the contract itself to determine the intent of the parties to enter binding arbitration. "If the language of the contract is clear and unambiguous, a court can interpret the contract as a matter of law." *Id.; see also Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Thus, when contract language is unambiguous, the court should give meaning to the intent of the parties. *Id.*

If Euro Pacific and Bohai wished to arbitrate disputes related to the Transaction Documents, then the parties would have done so by including an arbitration clause in at least one, if not all, of the agreements.  Instead, the parties agreed in clear and unambiguous language that:

9

> all legal proceedings concerning the interpretations,
> enforcement and defense of the transactions contemplated
> by this [Agreement and any other Transaction Documents]
> shall be commenced exclusively in the state and federal
> courts sitting in the City of **New York**. Each party hereto
> hereby irrevocably submits to the exclusive jurisdiction of the
> state and federal courts sitting in the City of **New York, New
> York** for the adjudication of any dispute hereunder or in
> connection herewith or with any transaction contemplated
> hereby or discussed herein…

*See* Notes Section 17 at Chema Aff. **Exhibit 1** (emphasis added); *see also* RRA Article

11(e) Chema Aff. **Exhibit 3** (emphasis added), SPA Article 9.1 Chema Aff. **Exhibit 2**

(emphasis added), Amendments Section 7 Chema Aff. **Exhibits 4** (emphasis added).

It is axiomatic that "[t]he intent of the parties must be clear to render

arbitration the exclusive remedy.  Parties are not to be led into arbitration through

subtlety." *Ben-Reuven v. Kidder Peabody & Co.*, 526 N.Y.S.2d 752, 754 (Sup. Ct.

1988).  "It is crucial to examine the precise language of the contract relating to

arbitration to glean the parties' intent concerning the scope of the arbitration." *Arthur* at

9.  "The scope of an arbitration clause must be interpreted according to the parties'

intentions and by ascertaining and examining the context in which it was made." *Id.*;

*see also Creative Sec. Corp. v. Bear Stearns & Co.*, 671 F. Supp. 961, 965 (S.D.N.Y.

1987), *aff'd without opinion*, 847 F.2d 834 (2d Cir. 1988).

Despite the FAA pro-arbitration policy, it is clear that the parties did not

intend to arbitrate disputes concerning default of the Notes.  The parties could have

elected to place an arbitration clause in any one of the original Transaction Documents,

executed contemporaneously, or subsequently, in any of the five (5) Amendments.

They chose not to, and indeed Euro Pacific expressly required jurisdiction in New York

and application of New York law.  It cannot reasonably be disputed that the arbitration

10

clause relied on by Defendant is found in a document unrelated to Bohai's default on the Notes and other Transaction Documents. The FEA and any obligations under it are not at issue in the Amended Complaint. A simple examination of the FEA reveals its singular, narrow purpose of holding certain monies in escrow by the Escrow Bank. *See* Chema Aff. **Exhibit 5** FEA at Definition 3. Furthermore, the FEA's arbitration clause itself helps to reveal the scope of the parties' intent. The clause states "any dispute arising from and related to *this Agreement*..." (emphasis added). The FEA specifically defines "Agreement" as "this [FEA], exhibits thereof, and any amendments, modifications and supplements to this Agreement and exhibits." *Id.* at Definition 1. Unlike the Transaction Documents which all cross reference one another and speak to Bohai's obligation under the Notes, the FEA does not (the FEA only speaks to the management of the Escrow Account by the Escrow Bank). Further, the FEA would have no effect on the Investors who converted their Notes into shares and are now Shareholders because the Shareholders would not be paid or recoup any money from the Escrow Account.

## B.   The FEA Is An Unrelated Ancillary Document Part Of A Separate Transaction.

As detailed above, the FEA's sole purpose is to guarantee payment on the Notes. The factual allegations in the Amended Complaint make no reference to the FEA because the facts and allegations do not concern guaranteeing payment. Rather, the issues at hand relate strictly to Defendant's default under the Transaction Documents and subsequent bad faith conduct. The FEA is not part of the same transaction; rather, it is a completely separate and unrelated transaction.

11

Defendant relies on *Sea Spray Holdings, Ltd. v. Pali Fin. Group., Inc.*, 269 F. Supp. 2d 356 (S.D.N.Y. 2003) for the notion that FEA and other Transaction Documents form a single transaction. Defendant's reliance on this case is misplaced. The court in *Sea Spray* found that the "**two** (emphasis added) documents represent a single, integrated transaction" because both instruments were executed on the same date, between the same parties, were attached to each other and address the same subject matter. *See Id.* at 360. None of these factors are present. The Defendant has falsely alleged that the FEA was executed contemporaneously with the Transaction Documents; this is simply not true. The Notes, SPA, and RRA were all executed on or about January 5, 2010. *See* Chema Aff. **Exhibits 2 and 3**. The Amendments to the Notes were executed on or about the following dates respectively, December 31, 2011, May 15, 2012, June 27, 2012, December 6, 2012, and April 21, 2014. *Id.* **Exhibits 6, 7, 8, 9 and 10**. Meanwhile, the FEA was executed on or about May 8, 2012. *Id.* **Exhibit 5**. The FEA is plainly not executed between the same parties. The FEA is the only document in which Shencoajishi and Escrow Bank are parties. It is not a coincidence that these two Chinese entities are only parties to a distinct and separate transaction, the FEA. In fact, the arbitration clause was included for the protection of the Escrow Bank, an entity with no presence or relations to the United States. The FEA is also not attached to any other document or even cross referenced as it would be in a single transaction. Even the Amendment to the FEA executed in or about February 2014 does not reference the Transaction Documents. *See* Chema Aff. **Exhibit 9**. Lastly, it is critical to keep in mind that the Notes were amended four (4) times after the FEA was executed, and each extension contains the same jurisdictional and forum

12

selection clause, requiring that all disputes be brought in the courts of New York, New York and governed by New York law.

## C.   The FEA Does Not Supersede The Parties' Earlier Forum Selection Clause Nor The Subsequent Forum Selection Clauses

It is well established that under New York Law a subsequent contract regarding the same matter will supersede the prior contract. *See Applied Energetics, Inc. v. Newoak Capital Mkts.,* LLC, 645 F.3d 522, 526 (2d Cir. 2011).  As detailed above, the subject matter of the FEA is different than the prior Transaction Documents, thus, it will not supersede the prior contracts.  However, even if the FEA did relate to the same subject matter, it is illogical to argue, as Defendant does, that the FEA would supersede the prior Transaction Documents, but the subsequent amendments do not supersede the FEA.

The Defendant erroneously relies on *Anderson v. Docuport, Inc.*, No. 06-civ-3769, 2007 U.S. Dist. Lexis 10106 (S.D.N.Y. Feb. 13, 2007) to argue that the FEA's arbitration clause supersedes the prior forum selection clauses in the Transaction Documents.  In *Anderson,* the subsequent agreement to extend the maturity dates of the notes contained an arbitration clause. *Id.* at 5.  The court found that the extension agreement modified the essential terms of the notes, "expressly setting forth a new agreement between the parties...." *Id.* at 22.  Unlike in *Anderson*, the FEA merely concerns the escrow of certain funds by the Escrow Bank.  The Amendments to the Notes clearly and unambiguously state all modifications to the essential terms of the Notes, such as the maturity date.  Furthermore, the Amendments to the Notes all contain the same forum selection clause, designating the court of New York, New York

13

as the proper forum for all legal proceedings, and Amendments three, four and five would all supersede the FEA in any event.

Plaintiff brought this action because of the Defendant's failure to report to the SEC, a blatant breach of contract and default of the Transaction Documents. The Amended Complaint further alleges breach of covenant and breach of implied covenant and good faith due to the intentional bad faith on the part of the Defendant to drive down the price of the stock in an eventual take private action. These matters only touch and concern the Transaction Documents; specifically, the Notes, its amendments, the SPA, and RRA. Accordingly, there is no contract that speaks to the factual allegations of the Amended Complaint containing an arbitration provision. Because arbitration is "a creature of contract," Defendant's Motion to Compel Arbitration cannot stand.

## II. The Third and Forth Causes of Action Should Not Be Dismissed Because Plaintiff's Sufficiently Pled Facts to Satisfy A Motion To Dismiss Pursuant To Fed. R. Civ. 12(B)(6)

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *Sikarevich Family, L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166 (E.D.N.Y. 2014). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *See id.* at 170, *citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.*, *citing Ashcroft*, 556 U.S. at 678.

14

**B.    The Breach Of Implied Covenant Of Good Faith And Fair
Dealing Is Not Duplicative Because It Relies On Different Facts
Than The Breach Of Contract Claim**

Plaintiff may maintain its fourth cause of action as it is not precluded by

the breach of contract claims.  While New York courts do not "recognize a separate

cause of action for breach of implied covenant of good faith and fair dealing when a

breach of contract claim, based upon the same facts, is also pled" (*Harris v. Provident

Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)), a breach of the implied covenant of

good faith claim can survive a motion to dismiss "if it is based on allegations different

than those underlying the accompanying breach of contract claim." *Ari & Co. v. Regent

Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003).

Despite being required by the Transaction Documents, Defendant has

failed to satisfy its required reporting obligation with the SEC.  This reporting violation

comprises the breach of contract claim.  Apart from this breach, Defendant has

engaged in a deceptive scheme or course of conduct to depress the market for its

shares so the company can buy back the securities at a lower value in order to take the

company private.  Am. Compl. ¶ 34.  *Inter alia*, Defendant's breach of the covenant of

good faith and fair dealing, count is supported by the following facts:

- Delay and stall tactics to obstruct the rights of the Investors,
causing Euro Pacific in good faith, to continually extend the Maturity
Date of the Notes for five (5) years. Am. Compl. ¶ 13;

- Claiming an inability to pay off the debt despite maintaining
profitable reports. Am. Compl. ¶ 26.  The latest 10-Q filed with the
SEC, indicates that the company maintains, over $202 million in
assets, including approximately $27 million in cash alone and
another $7.75 million cash remaining in the Escrow Account. Am.
Compl., *see* Chema Aff. **Exhibit 11**, Form 10-Q for the quarterly
period ended September 30, 2014 at p. 5, 13.  Furthermore, the
Bohai also maintained a net income over $9 million for the three

15

months ending September 30, 2015.   Am. Compl., Chema Aff. **Exhibit 11** at 6.

• Ignoring Euro Pacific's request for information.  Am. Compl. ¶ 27.

• Informing Euro Pacific that it stopped reporting to the SEC for the improper purpose of speeding up "the go private process." Am. Compl. ¶ 28, see Chema Aff. **Exhibit 12**.

• Refusing to provide books and records per the official request of Euro Pacific.  Am. Compl. ¶ 29, see Chema Aff. **Exhibit 13**.

• Preventing Investors from recouping their investment by "going dark" by depriving Investors of a market in which to sell their investment.  Am. Compl. ¶ 30, 32.

• Acting with the purposeful, malicious intent to engage in a deceptive scheme or course of conduct to improperly depress the market for its shares so the company can buy back the securities at a lower value in order to take the Company private.  Am. Compl. ¶ 33, 34.

Destroying the market for the company's securities, by driving down the price to take the company private would undoubtedly "destroy or injure" the Investors right to receive the fruits of the contract.  This is the very basic premise upon which a covenant of good faith and fair dealing is implied in a contract.  See Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006).

The idea that a company would engage in a scheme to benefit itself to the detriment of its shareholders is the essence of a breach of covenant of good faith and fair dealing.  Accordingly, Defendant is in breach of the implied covenant of good faith and fair dealing by virtue of its intent to maliciously act to the detriment of Plaintiff by destroying the market for its shares, for Defendant's own financial gain.  See Dalton v. Educ. Testing Serv., Inc., 663 N.E.2d 289, 296 (N.Y. 1995) (holding that the implied obligation forbids the contractual parties from conduct "which will have the effect of

16

destroying or injuring the right of the other party to receive the fruits of the contract.").
*See also Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*, 524 N.Y.S.2d
531, 534-35 (App. Div. 1988) (A lender's wrongful conduct breaches the implied
covenant of good faith and fair dealing if directly impairing a contract's value to the other
party making it inconsistent with the intent of the parties).

## C. The Breach Of Covenant Is Likewise Not Duplicative or Redundant

Plaintiff likewise may maintain its third cause of action as it is not
precluded by the breach of contract claims. It is axiomatic in contract drafting that the
remedy for failure to adhere to a contractual obligation should be designed to deter non-
compliance and also to protect the interests of the non-defaulting party. Here, the
Transaction Documents contain a covenant requiring that Bohai report to the SEC. The
provision is important because it was designed to provide early warning signs of
potentially imminent payment difficulties. In this case, it also reflects Bohai's bad faith
efforts to depress its stock and take the company private. Unlike the breach of contract
count which seeks an award of damages, the breach of covenant count requests a
mandatory injunction requiring Bohai to report to the SEC. *See Kahn v. N.Y. Times Co.,*
503 N.Y.S. 2d 561, 566 (App. Div. 1986) (granting a mandatory injunction requiring
Defendant to provide relevant business information to Plaintiff based on a breach of
covenant cause of action). The count is neither redundant nor duplicative. Significantly,
Bohai fails to cite any authority for its dismissal.

17

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the

Court deny Defendant's motion to stay the action and compel arbitration and further

requests the Court deny Defendant's motion to dismiss the third and fourth causes of

action.

Dated: November 16, 2015
      New York, New York

                       ANDERSON KILL P.C.

                       David Graff, Esq.
                       Christopher L. Ayers, Esq.
                       Rachael Kierych, Esq.
                       dgraff@andersonkill.com
                       cayers@andersonkill.com
                       rkierych@andersonkill.com
                       1251 Avenue of the Americas
                       New York, NY 10020
                       (212) 278-1000
                       Attorneys for Plaintiff