Leodis C. Matthews (admitted *pro hac vice*)
Eugene Meyers
DACHENG LAW OFFICES LLP
2 Wall Street, Floor 21
New York, New York 10005
Tel: (212) 380-8388
Fax**:** (212) 810-1995
Email: Leodis.Matthews@dachenglaw.com
       Eugene.Meyers@dachenglaw.com
*Attorneys for Bohai Pharmaceuticals Group, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EURO PACIFIC CAPITAL INC, individually and in its capacity as Investor Representative and attorney-in-fact for BRUCE WALKER RAVENEL, et al.<br><br>                    Plaintiff,<br><br>- against -<br><br>BOHAI PHARMACEUTICALS GROUP, INC.<br><br>                    Defendant. | Case No. 15 Civ. 4410 (VM)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO COMPEL ARBITRATION** |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION

Defendant Bohai Pharmaceuticals Group, Inc. ("Bohai") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss and to Compel Arbitration pursuant to 9 U.S.C. §§ 3 and 206 and Fed. R. Civ. P. 12(b)(6).

## I. DEFENDANT'S MOTION TO COMPEL ARBITRATION

The opposition brief submitted by Plaintiff Euro Pacific Capital Inc. ("Euro Pacific" or "Plaintiff"), together with its accompanying affidavit, plainly acknowledges that it entered into a valid and enforceable arbitration clause. Plaintiff – a signatory to the arbitration agreement – now attempts to avoid arbitrating its claims by arguing that: (i) it cannot be compelled to arbitrate claims brought against Bohai, a non-signatory; and (ii) its claims bear no relation to the arbitration agreement and, thus, should escape the broad arbitration clause it agreed to.

Although Plaintiff's brief fails to address the arbitrability factors adopted by the Second Circuit, the two issues raised in the opposition relate to the first two factors outlined in *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998): (1) "whether the parties agreed to arbitrate" and (2) "the scope of the agreement."

### A. Plaintiff is estopped from disavowing its valid obligation to arbitrate its claims

The only dispute among the parties as to the validity of their arbitration agreement is whether Plaintiff agreed to arbitrate solely with the entities that executed the Three Parties Fund Escrow Agreement, dated May 8, 2012 (the "FEA"). It is clear – and undisputed – that Plaintiff executed and entered into the FEA.[1] Euro Pacific's sole contention is that it should not be compelled to arbitrate with Bohai, a non-signatory.

---

[1] In fact, Plaintiff has, for the first time, produced an amendment to the FEA, executed solely by the Plaintiff on March 24, 2014. *See* Chema Aff. Exhibit 9 (Doc. No. 24-9).

Courts have recognized that equitable estoppel principles allow a non-signatory to compel the arbitration of claims brought by a signatory to the arbitration clause where "(i) there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are intimately founded in and intertwined with the underlying agreement containing the arbitration clause." *Birmingham Assocs., Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 301 (S.D.N.Y. 2008) (citation omitted).

The Plaintiff, relying on the fact that Bohai is not a signatory to the FEA, disingenuously argues that the FEA is the written embodiment of a distinct and separate transaction bearing no relation to the Transaction Documents executed between Bohai and Euro Pacific. The opposition brief further adds that the FEA's arbitration clause was intended solely for the benefit of the third-party escrow agent.[2] However, as this court has held, the "standard that governs equitable estoppel looks to the degree to which the issues sought to be arbitrated are intertwined with the agreement the estopped party has signed, not to evidence that the estopped party actually intended or expected that any dispute with the non-signatory would be subject to arbitration." *Halcot Navigation L.P. v. Stolt-Nielsen Transp. Grp.*, 491 F. Supp. 2d 413, 422 (S.D.N.Y. 2007).

### 1. Bohai and its wholly-owned operating subsidiary have a sufficiently close relationship under the estoppel doctrine

Plaintiff acknowledges that Yantai Shencaojishi Pharmaceuticals Co., Ltd. ("Shencaojishi"), a signatory to the FEA, is a wholly-owned operating subsidiary of Bohai, and that Bohai is merely a holding company. Pl. Opp. at 4; Am. Compl. ¶ 10. In addition, Shencaojishi share the same principal, Hongwei Qu, and the same office location in China. *See,*

---

[2] The opposition brief also asserts that the noteholders that have converted their promissory notes into shares are no longer affected by the terms of the FEA. This argument must be dismissed since neither the complaint nor the affidavit accompanying the opposition brief allege that certain investors did not execute the FEA and should not be bound by its terms. In any case, as this court noted in *Sea Spray Holdings Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356 (S.D.N.Y. 2003), the court may stay this action as against non-parties to the FEA pursuant to the Federal Arbitration Act and the court's inherent power to manage and control its docket effectively. *Id.* at 366-67.

FEA at 1 (listing Shencaojishi's address and principal); Sec. Am. at 4 (Meyers Decl. Ex. G) (Doc. No. 15-9) (providing Bohai's principal); Excerpts from Bohai's Form 2014 10-K at 1 (Meyers Decl. Ex. K) (Doc. No. 15-13) (listing Bohai's address). Even more significant to this dispute, throughout the parties' business relationship, Euro Pacific has treated Shencaojishi and Bohai interchangeably. Where a signatory to an agreement containing an arbitration clause treats a non-signatory as if it were a party to such an agreement, the signatory is estopped from challenging the applicability of the arbitration clause. *See Astra Oil Company, Inc. v. Rover Navigation, Ltd.*, 344 F. 3d 276, 281 (2d Cir. 2003) (finding estoppel where plaintiff treating non-signatory as if it were a party to the arbitration agreement); *Smith/Enron Cogeneration L.P. v. Smith Cogner*, 198 F.3d 88, 97-98 (2d Cir. 1999) (same).

Illustratively, the FEA states, in pertinent part: "The Escrow Account is opened and used for the purpose agreed hereunder and pursuant to that certain Second Amendment to the Notes to be entered between Party A and Party C concurrently with the funding of the Escrow Account." FEA at Art. IV.1(2) (Meyers Decl. Ex. E) (Doc. No. 15-7).[3] As contemplated by the FEA, Euro Pacific and Bohai executed the Second Amendment to the Notes shortly after the FEA. The Second Amendment provided that "on, or about May 8, 2012, the Company established an escrow account in China"[4] and that "[u]nder the terms of the Escrow Agreement, the Company will have no right to withdraw, dispose of or use the funds contained therein . . . ." Sec. Am. at 1-2 (Meyers Decl. Ex. G) (Doc. No. 15-9). As this court previously found, "where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together." *Sea Spray Holdings Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d. 356, 360 (S.D.N.Y. 2003) (citations omitted).

---

[3] The FEA defines "Party A" as Shencaojishi and "Party C" as Euro Pacific. FEA at 2.
[4] The Second Amendment defines the "Company" as Bohai.

3

Similarly to the facts of that case, the FEA and the Second Amendment cross-reference each other, both are executed by Euro Pacific and Bohai (or its operating subsidiary) and both address the same subject matter – an extension of payment on the same Notes in consideration for Bohai's presentation of adequate assurance in the form of a guaranty and escrow of funds.[5]

Almost two years later, Plaintiff continued to treat Bohai and its subsidiary interchangeably in the Fifth Amendment to the Notes, entered into on or about April 21, 2014, stating that "on or about May 8, 2012, the Company established an escrow account in China (the 'Escrow Account') with Rural Credit Cooperative of Binhai, Laishan District, Yantai City and deposited into such Escrow Account an amount equal to 90% of the aggregate Principal due on the Notes (approximately US$9.4 million), denominated in Renminbi." Fifth Am. to the Notes at 1 (Meyers Decl. Ex. J) (Doc. No. 15-12). Furthermore, Plaintiff ratified the FEA in 2014, according its submission in opposition. *See* Chema Aff. Exhibit 9 (Doc. No. 24-9).

It is apparent that Plaintiff has only now determined to differentiate between these closely related entities because it would be beneficial to its goal of disavowing arbitration. The Second Circuit has admonished just this sort of argument in *Smith/Enron Cogeneration L.P. v. Smith Cogner*, 198 F.3d 88 (2d Cir. 1999). In that case, the plaintiff treated a group of related companies interchangeably, even mailing correspondence for the various companies to the same address. *Id.* at 97. Yet, when one of the entities, a non-signatory to an arbitration agreement, sought to compel arbitration against the plaintiff, who was a signatory, the plaintiff sought strict adherence to the corporate form. *Id.* The Circuit Court held that since plaintiff treated the group of entities as a single unit, it cannot now shield itself from arbitration by arguing that only the

---

[5] Plaintiff's opposition misinterprets the opening brief's reliance on *Sea Spray Holdings*. Pl. Opp. at 12. Bohai did not assert that the FEA and the Transaction Documents were contemporaneous documents. Rather, Bohai's brief relied on this case's holding to establish that the contemporaneously executed Transaction Documents must be interpreted as a single unit – which remains undisputed. *See* Def. Memo. of Law at 15-16. Pl. Opp. at 11.

parties it selected not to sue would have the right to invoke it. *Id.* at 98. Likewise, this court must not permit Euro Pacific to use the same disingenuous tactics.

### 2. Plaintiff's claims are intertwined with the terms of the FEA

Just as the relationship is close among the parties to this case and the entities that entered into the FEA, the claims brought by Euro Pacific are intertwined with the terms of the FEA. "Claims are intertwined where the merits of an issue between the parties are bound up with a contract binding one party and containing an arbitration clause." *Bimota Spa v. Rousseau*, 628 F. Supp. 2d 500, 504 (S.D.N.Y. 2009) (citations omitted). The Amended Complaint alleges that Bohai breached its contract by failing to make debt payments that became accelerated as a result of an event of default.

In order to provide Bohai's noteholders with adequate assurance, Bohai's wholly-owned subsidiary executed the FEA and escrowed sufficient funds to guarantee payments on the promissory notes. *See Id.* at 4; Chema Affidavit, ¶ 18.[6] The terms of the FEA provide that Bohai, through its operating subsidiary, would fund an escrow account to guarantee the re-payment of the outstanding amounts due on Plaintiff's promissory notes, and that Bohai, through its operating subsidiary, would cause the transfer of the escrowed funds, in a timely manner, to the noteholders in accordance with the terms of the promissory notes. FEA at 1-2; Art. I.2(4); Art. V.1. At the core of its breach of contract claims, Euro Pacific seeks to collect on the debt owed to Bohai's noteholders, which Bohai and its subsidiary promised – in its agreement with Euro Pacific – would be paid directly from the funds escrowed under the FEA. Accordingly, Plaintiff

---

[6] Although the Affidavit of Peter Chema accompanying Plaintiff's opposition brief includes facts beyond those pled in the Amended Complaint, the court may consider extrinsic evidence for the purpose of determining arbitrability. *See Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 548 (S.D.N.Y. 2011).

cannot now seek to separate the FEA from its claims that Bohai failed to cause timely payments to be made out of the associated escrow account.

Apart from simply collecting on the noteholders' debt, Plaintiff further seeks damages for Bohai's alleged breach of an implied covenant of good faith and fair dealing. Plaintiff alleges that Bohai orchestrated a scheme to breach its duties to the noteholders by engaging in bad faith stall tactics, including Bohai's representations that local Chinese regulations prevented it from transferring funds outside of China for the benefit of the noteholders. *See* Pl. Opp. at 4, 15. These same representations led the parties to agree to place sufficient funds, denominated in renminbi, in an escrow account governed by the FEA.

Furthermore, according to Plaintiff's opposition brief, Bohai failed to act in good faith by claiming an inability to pay off the promissory notes while maintaining allegedly available funds escrowed under the FEA. *Id*. at 15. According to the opposition brief, Bohai's improper and bad faith obstruction tactics led to several extensions and accompanying amendments to the promissory notes. Pl. Opp. at 15-16. As outlined *supra*, the FEA and its associated escrow account were a critical feature of the extensions. Without Bohai's ability to persuade Euro Pacific to enter into the FEA, Bohai could not have achieved its allegedly bad faith stalling tactics. Accordingly, the terms of the FEA are intertwined with Plaintiffs breach of implied covenant claim.

Since it is established that the parties and claims are interwoven with the FEA, it is axiomatic that Euro Pacific, a signatory, should be estopped from disclaiming the FEA's arbitration clause. As this court previously held, "[t]he purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is from relying on the contract when it works to its advantage by establishing the claim, and repudiating

6

it when it works to his disadvantage by requiring arbitration." *Bimota Spa*, 628 F. Supp. 2d at 505 (citations omitted).

### B.  Plaintiff has failed to meet its burden to provide positive assurances that its claims fall outside of the concededly broad arbitration clause

Once it has been established – as it has here – that the parties have agreed to arbitrate certain disputes, the courts in this Circuit must conduct a two-step inquiry to determine whether the asserted claims fall within the scope of the arbitration clause.[7] *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). First, the court must classify the arbitration clause as broad or narrow. *Id.* Plaintiff's opposition brief makes no effort to substantively address the requisite standards, and it must be deemed conceded that the language used in the FEA's arbitration clause – "Any dispute arising from and related to [the FEA]" – is classically broad. *See* Def. Memo. of Law at 10-11 (Doc. No. 15-1).

Upon the finding of a broad clause, the presumption of arbitrability attaches and the Plaintiff must provide "positive assurances that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco Inc. v. T. Kakiuchi & Co. Ltd.*, 815 F. 2d 840, 846 (2d Cir. 1987).

Plaintiff's opposition brief clearly fails to provide the necessary positive assurances required to remove its claims outside of arbitration. Instead, Plaintiff supports its position with the naked assertion that the FEA bears no relation to the allegations of the Amended Complaint and that the parties intended the FEA's arbitration clause to be limited to disputes with the

---

[7] The scope of a valid arbitration clause is subject to substantive federal law, which pre-empts any contrary state law. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993).

escrow agent. As the Second Circuit has held, the issues subject to arbitration need not be contained solely within the four corners of the arbitration agreement. *See Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 50 (2d Cir. 2000). Furthermore, interpreting the expansive effect of a broad arbitration clause need not be limited to the parties' motivating purpose in entering into the arbitration agreement. *See Smoothline Ltd. v. North American Foreign Trading Corp.*, 249 F.3d 147, 154 (2d Cir. 2001).

As detailed *supra*, the terms of the FEA are intertwined with the allegations asserted in the Amended Complaint and Plaintiff's affidavit, including Bohai's alleged failure to timely transfer funds from escrow pursuant to the terms of the Notes and the alleged bad faith tactics Bohai used to induce Euro Pacific to enter into the FEA and thus stalling re-payment of the promissory notes. Accordingly, considering the federal policy requiring courts to construe arbitration clauses as broadly as possible, the Amended Complaint undoubtedly implicates issues of the contract construction and the parties' rights and obligations under the FEA. *See Louis Dreyfus Negoce*, 252 F.3d at 228-29.

### C. The amendments referenced in Plaintiff's opposition do not supersede the FEA's arbitration clause

Plaintiff also argues, in the alternative, that amendments to the promissory notes that post-date the FEA provide forum selection clauses that supersede the FEA's arbitration provision. This argument is unpersuasive in light of federal policy favoring arbitration. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389-90 (2d Cir. 2007) (holding that, as opposed to arbitration, "the absence of a congressional policy on forum clauses prompting us to err on the side of coverage is significant").

First, it must be submitted that, contrary to Plaintiff's assertions, the forum selection clauses found in each of the referenced amendments are materially distinguishable from the

forum selection clauses found in the Transaction Documents. Specifically, the respective clauses are each expressly limited to the specific document that includes such clause. Accordingly, the amendments' forum selection clauses are only limited to the transactions contemplated by each amendment, and cannot be interpreted to include transactions distinct from such amendment.

In addition, the amendments only modify the Notes to the extent expressly provided in the second clause of each amendment. *See, e.g.,* Second Am. at 2 (Meyers Decl. Ex. G); Fifth Am. at 2 (Meyers Decl. Ex. J). By the plain terms of the amendments, none of them actually seek to amend the forum selection clauses found in the promissory notes. Rather, the amendments' forum selection clauses are limited to the implementation of the amendment, and hence expire upon the amendment's execution. This interpretation is supported by the fact that the amendments do not contain any type of survivor clause. In fact, the final amendment expressly states that the Amendment agreement expired on April 21, 2015. Fifth Am. at 4.

Finally, the referenced amendments do not contain any type of merger clause that would supersede the FEA's complimentary arbitration clause. As the Second Circuit found in *Applied Energetics, Inc. v. Newoak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011), only a specific merger clause found in a later agreement can supersede a valid arbitration clause. *Id.* at n.1 (arbitration displaced where the later agreement's adjudication clause specifically precluded arbitration and identified all agreements excluded from the merger clause). Under Second Circuit precedent, "if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it . . . ." *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) (finding that a later-executed forum selection clause can be complementary to an earlier arbitration clause).

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As submitted in Bohai's opening brief, Plaintiff's claims for breach of implied covenant of good faith and fair dealing and breach of covenant are precluded by the Amended Complaint's breach of contract claims. Inappropriately, Plaintiff introduced new factual allegations in the affidavit accompanying its brief to attempt to defeat Bohai's meritorious argument. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the problem arises when a party seeks to introduce affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion"). Nonetheless, its new allegations are insufficient to overcome extant authority that does not recognize implied covenant claims that are based upon the same facts as breach of contract claims. *See Harris v. Provident Life & Accident Ins. Co.*, 310 F. 3d 73, 81 (2d Cir. 2002).

Plaintiff's opposition affidavit alleges that Bohai breached the implied covenant by using bad faith stalling tactics to avoid timely payments under the promissory notes. However, since Plaintiff also pleads that Bohai breached its promissory notes by defaulting on the accelerated payment provisions, the breach of implied covenant claim is intrinsically tied to the breach of contract and cannot support an independent claim. In addition, Plaintiff's meritless argument that Bohai's violation of an express covenant to publish regular public reports can form an independent basis for an implied covenant claim must be dismissed. Since Plaintiff's extraneous affidavit does not even proffer allegations that would substantiate an independent implied covenant claim, this cause of action should be dismissed under Rule 12(b)(6), with prejudice.

Likewise, the new allegations do not support an independent claim for breach of the Transaction Documents' express covenants, and such claim is obviously superfluous to the claims for breach of the terms of the Transaction Documents.

## III. CONCLUSION

For the reasons and arguments set forth above, Defendant respectfully requests that the Court dismiss this action and compel arbitration pursuant to 9 U.S.C. §§ 3 and 206. In any event, dismiss Plaintiff's third and fourth causes of action pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice.

Dated: December 4, 2015

Respectfully Submitted,

DACHENG LAW OFFICES LLP

By: /s/ Leodis C. Matthews
Leodis C. Matthews (admitted *pro hac vice*)
Eugene Meyers
Two Wall Street, Floor 21
New York, New York 10005
(212) 380-8388
*Attorneys for Bohai Pharmaceuticals Group, Inc.*