UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EURO PACIFIC CAPITAL INC., individually and in its capacity as Investor Representative and attorney-in-fact for BRUCE WALKER RAVENEL, et. al.,

                            Plaintiffs,

      vs.

BOHAI PHARMACEUTICALS GROUP, INC.,

                          Defendant.

Case No.: 1:15-cv-04410-VM

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF <u>INQUEST FOR DAMAGES</u>

**ANDERSON KILL P.C.**

David Graff, Esq.
Christopher L. Ayers, Esq.
Alex Litt, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.:  212-278-1000
Fax:  212-278-1733

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 3

FACTUAL BACKGROUND ........................................................................................... 4

DAMAGES ................................................................................................................... 5

    A.    The Notes ....................................................................................... 5

    B.    "Put" Option .................................................................................... 6

    C.    Attorney's Fees and Costs ............................................................. 7

LEGAL ARGUMENT .................................................................................................... 8

    A.    Noteholders' Damages on the Notes ............................................. 9

    B.    Shareholder's Damages and The Legal Precedent Granting
           a "Put" Option ............................................................................ 11

    C.    Attorney's Fees and Costs ........................................................... 14

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Agbaje v. Bah,
  09 Civ. 6201, 2010 U.S. Dist. LEXIS 142529 (S.D.N.Y. Dec. 23, 2010) ................... 9

Deutsch v. ZST Digital Networks,
  C.A. No. 8014-VCL ..................................................................................... 12

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,
  375 F.3d 168 (2d Cir. 2004) .......................................................................... 8

Pope Investments v. Shengtai Pharmaceutical, Inc.,
  C.A. No. 9122-ML (Del. Ch. April 3, 2014) (order dated April 3, 2014)
  ("SGTI") ...................................................................................................... 12

Trillion Growth China, LP v. NIVS Intellimedia Technology Group, Inc.
  C.A. No. 9226-ML (order dated September 11, 2014)(order dated
  November 13, 2014) ("NIVS") ....................................................................... 12

G&N Aircraft, Inc. v. Boehm,
  743 N.E.2d 227 (Ind. 2001) .......................................................................... 13

Gulf Coast Bank & Tr. Co. v. ASESD, LLC,
  No. 11-CV-5023 (RMB) (RLE), 2014 U.S. Dist. LEXIS 168327
  (S.D.N.Y. Aug. 29, 2014) ............................................................................. 10

Hamilton v. Nozko,
  1994 Del. Ch. Lexis 139 (Del. Ch. Jul. 26, 1994) ........................................... 11

In re Southern China Livestock Litigation,
  C.A. No. 8851-VCN (order dated January 17, 2014)(order dated March
  14, 2014)..................................................................................................... 12

In re Yinlips Technology Inc. a/k/a Yinlips Digital Technology Co. Ltd.
  Litigation, C.A. No. 8865-VCP (order dated January 7, 2014)(order
  dated February 27, 2014);

Kempf v. Mitsui Plastics,
  96 Civ. 1106, 1996 U.S. Dist. LEXIS 17240 (S.D.N.Y. Nov. 18, 1996) .............. 9

Reis v. Hazelett Strip-Casting Corp.,
  28 A.3d 442, 476 (Del. Ch. 2011) ................................................................. 13

RSL Communs. PLC v. Bildirici,
  649 F. Supp. 2d 184 (S.D.N.Y. 2009) ............................................................ 11

nydocs1-1078067.1

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Seagraves v. Urstadt Property Co., Inc.*,
    1989 Del. Ch. Lexis 155 (Del. Ch. Nov. 13, 1989) ............................................. 11, 12

*Seidman v Indus. Recycling Props., Inc.*,
    967 N.Y.S. 2d 77 (App. Div. 2013) ............................................................... 9

*V.S. Int'l, S.A. v. Boyden World Corp.*,
    No. 90 Civ. 4091 (PKL), 1993 U.S. Dist. LEXIS 2586 (S.D.N.Y. Mar. 4,
    1993) ............................................................................................... 14

### OTHER AUTHORITIES

36 NY Jur Damages § 46 (2nd 2014) ............................................................... 9

72 NY Jur Interest and Usury § 9 (2nd 2014) ..................................................... 9

Fed. R. Civ. P. 8 ........................................................................................ 9

Reuters Article .......................................................................................... 11

Wall Street Journal article ........................................................................... 11

Plaintiff Euro Pacific Capital Inc., ("Euro Pacific") individually, and in its capacity as Investor Representative and attorney-in-fact for Bruce Walker Ravenel; POM Investments; Joseph McCarthey IRA; NFS/FMTC SEP FBO Carter Laren; NFS/FMTC SEP FBO Gerald Mona; Thomas L. Ingram and Carissa Ingram as trustees for the Ingram Living Trust U/A 11/2/05; NFS/FMTC SEP IRA FBO Gerald E. Manwill; Arnold William Goldschlager and Nora Goldschlager as trustees for the Goldschlager Family Trust U/A 6/24/04; John A. Rupp as trustee for the John A. Rupp Trust U/A 3/9/07; William A. Karges Jr. as trustee for the Karges Revocable Intervivos Trust U/A 4/29/85; Richard Griff and Jackie Griff; Christianna Seidel as trustee for the Christianna Seidel Property Trust U/A 11/5/99 FBO Christianna Seidel; Kenneth H. Nass and Maureen Nass as trustees for the Kenneth H. & Maureen K. Nass Charitable Trust U/A 6/7/05; David Arita; Amy J. Stefanik as trustee for the Amy J. Stefanik Revocable Trust U/A 2/6/01; Steven Jay Epstein; Selwyn Adelson; Syed Hasnat Ahmed; Andrew McCollam for AM-PER Enterprises; Alma Arthur & William Bypass Trust; James Bacon for Dojacon LLC; Jeff Baker IRA; Sarah J. Basler Living Trust; Richard Benamy; Middlesex Ortho 401k; Larry Berson; Jeff Blackburn; Ron Bovasso and Linda Bovasso; Jamie Brown; Brad Carr; Lowell Cerise; Don Clemetson; Roland Cram; Rob Dahlander for Integrity Funds; Jonathan Edwards and Virginia Adams Edwards; Art Eklund; Vic Ferrer; Andrew Garnock; Bob Hiemann; the Karan Hoss Trust; the Herschel Hunter Trust (HACKER); IRA Jon Karkow; Darrell Kloeckner; IRA Thomas Ladner; Scott Lennes; Gregg Linhoff; Madaraz SEP; David Marble; Abby Margalith for Northern Star Growth Trust; Stephen McCarron Profit Sharing Plan; Rod McIntyre; Roth IRA Mark Roger Mitchell; Dr. Mark Mitchell Profit Sharing Plan; MMH Group LLC; Timothy Nass;

Mary Neiberg; Kevin O'Neill and Suzanne O'Neill; Joseph Panella; Tina Peterson; Steve

Sann; Peter Schortmann; Kim Schwenke; James Sheahan; IRA Donald Shoff; IRA

Charles Sullivan; IRA Gerald Surerus; Abdolhosayn Taslimi and Shidan Taslimi;

Mehran Taslimi; Ruha Taslimi and Shidan Taslimi; Shidan Taslimi; Susanne Taslimi;

Wain White; Lambert Wu and Chu Wu Liying JTTEN; Lane Yoshida; IRA Paul Zink;

Trillion Dollar Growth; North Military Ltd.; Chadds Ford Ltd. (collectively the

"Noteholders"); Carlos A. Merino as trustee for the Carlos Alfonso Merino Revocable

Living Trust U/A 12/4/96; Mitchell Martin and Deborah Martin; William Bradley as

administrator for the Bradley Anesthesiology Profit Sharing Plan; Brent Paulger; Kevin

Moore; NFS/FMTC IRA FBO Robert Stephen Adams; Steve Hoke and Collen Hoke as

trustees for the Hoke Living Trust U/A 4/19/02; NFS/FMTC Rollover IRA FBO Lynn

Rollins Stull; David W. Larson and Jennifer L. Larson; John D. Smead; Bert Huntsinger;

David Brisbin for White Pine Productions; NFS/FMTC IRA FBO Diane D. Spolum;

NFS/FMTC Rollover IRA FBO Ralph Dale Edson; Walter Friesen; William Ten Brink as

trustee for the Ten Brink Trust U/A 10/2/86; NFS/FMTC Rollover IRA FBO James A.

Tamborello; Barbara S. Meister as trustee for the Meister Non-Exempt Marital Trust U/A

11/17/83; Norman S. Kramer and Linda L. Kramer; Michael Baldwin; Hollow Balfour for

Hope Bash; IRA Patricia Browne; Scott Burns; Robert Carlson and Michelle Carlson;

Steven Charles; Jorge Echeverria; Phyllis Echt; IRA Don Fagen; the Alexander and

Yana Galuz Trust; Richard Helppie; Howard Hickingbotham and Sandra Hickingbotham;

Ulrich Honighausen and Amanda Honighausen; Ajay Kalra; Patrick Kirk and Gloria Kirk;

Scott Langmack and Lori Langmack; Brent May; Deepak Munjal; Robert Pickering and

Brian Pickering; SERP Carl Rice; Russ Riedmueller and Nicole Riedmueller; Robert

Sayson and Alice Sayson; the Spielman and Elkin Revocable Trust; Spongbob

Ventures; Rob Vecchione; Matthew A. Walton; Tim Weaver; the Worthington (Dipaolo)

Family Trust; Wymond Investments, LLC; Jayhawk Private Equity (collectively the

"Shareholders") (Noteholders and Shareholders referred to collectively as the

"Investors") and their assignees, in this action by and through their attorneys, Anderson

Kill P.C., respectfully submit this Memorandum of Law in Support of Plaintiffs' Inquest

for Damages pursuant to this Court's Order dated April 15, 2016 (Doc. 42).

## PRELIMINARY STATEMENT

Plaintiffs submit this Inquest Memorandum after obtaining a default

judgment against Defendant.  After agreeing to borrow money from the Investors, Bohai

Pharmaceuticals Group Inc. ("Bohai") has "gone dark," turnings its back on its U.S.

investors.

Bohai, a Nevada corporation with operations in China, willfully refused to

comply with the terms of promissory notes and has failed to provide basic financial

information to the Securities and Exchange Commission ("SEC") and the Investors.

This case is about more than a company's failure to produce books and records.

Rather, it is about a growing and disturbing trend among Chinese companies with

publicly filed audited financial reports that suddenly "go dark," de-list (depressing the

stock's market value) and thereafter refused to acknowledge the basic rights of its U.S.-

based investors. Bohai fits squarely into this trend.

Despite answering the complaint with a motion to dismiss and even

engaging in mediation with Plaintiffs, Bohai has since refused to participate in this

litigation.  Bohai has turned its back on its U.S. investors, and its actions threaten to

leave the Plaintiffs with no reasonable means of recouping their investment.  Yayi has

likewise turned its back on this State by its refusal to recognize the judicial process.

Under these circumstances, the Plaintiffs respectfully request that this

Court order all damages respectfully detailed and requested herein.  Specifically,

Plaintiffs have requested damages based on the principal and interest on the Notes (as

defined below), a "put" option for those Noteholders who converted their Notes into

shares of the company, and attorneys' fees and costs for Euro Pacific.

## FACTUAL BACKGROUND

Defendant Bohai is incorporated under the laws of the state of Nevada

with its principal business operations in the People's Republic of China.  *See* Affidavit of

Peter Chema dated January 11, 2017 ("Chema Aff.") ¶ 4.  Bohai is engaged in the

production, manufacturing, and distribution of herbal pharmaceuticals based on

traditional Chinese medicine in the PRC.  *Id.* ¶ 5.  Plaintiff Euro Pacific Capital Inc. is an

investment company incorporated under the laws of the state of California, with its

principal place of business in Westport, Connecticut.  Euro Pacific is the Investor

Representative and attorney in fact for the Investors, and authorized to act on their

behalf.

On or about January 5, 2010, the Investors invested $11,100,000.00 in

Bohai through the Notes, an SPA and RRA.  This investment consisted of a $2.00, two-

year convertible note.  The Maturity Date of said note was April 5, 2016.  *Id.* ¶ 6.

Interest on the Notes "shall accrue on the unpaid principal amount of this Note from the

date hereof [January 5, 2010] until such principal amount is repaid in full at the rate of

eight percent (8%) per annum, payable quarterly in arrears on the [Bohai's] [] day of

each fiscal quarter." *Id.* **Exhibit A**.  The Notes were subsequently amended five times,

4

*inter alia*, extending the maturity date and changing the interest rate to twelve percent (12%) (the "Amendments").  *See Id*.  **Exhibits B-D**.  Subsequent to the execution of the Notes, pursuant to the terms of the SPA and RRA[1] many Noteholder converted their outstanding principal and interest into shares of Bohai.  *Id*.  ¶¶ 12-13.

Rather than make the payments on the Notes, Bohai has "gone dark" and ceased making the required filings with the SEC pursuant to the SPA.  *Id*.  ¶ 14.  As a result of Bohai "going dark," the Investors have not recouped their investment and the Shareholders are deprived of a market to sell their investment, as any decision to buy, sell, or hold by all market participants is rendered impossible.  *Id*.  ¶ 15.

## DAMAGES

### A.    The Notes

As set forth in the Affidavit of Peter Chema, Bohai borrowed $11,100,000.00 from the Investors at eight percent (8%) interest per annum.  *Id*.  ¶ 7.  To date, an outstanding principal amount of $4,987,020.59 inclusive of the Noteholders that did not convert their Notes into shares.  *Id*.  ¶ 17, **Exhibit E**.

The pertinent language of Section 3 of the Notes state that interest "shall accrue on the unpaid principal amount of this Note from the date hereof [January 1, 2010] until such principal amount is repaid in full at the rate of eight percent (8%) per annum, payable quarterly in arrears on the [Bohai's] [] day of each fiscal quarter."  *Id*.  ¶ 7.  However, pursuant to the amendments to the Notes, the interest rate changed from eight percent (8%) to twelve percent (12%) on January 5, 2012.  *Id*.  ¶ 8.  This interest rate continued until the day of default judgment was granted on April 4, 2016.

---

[1]       Terms not defined herein shall have the same meaning as the First Amended Complaint. *See* Doc. No. 13.

The interest on the outstanding Notes calculated from the date of the Notes, when interest commenced on January 1, 2010, through April 4, 2016, the date the Clerk of this Court entered default is $3,342,533.  Defendant has failed to pay Noteholders the monies owed pursuant to the Notes.  Plaintiffs have accrued additional interest since the date the default was entered by the clerk in the amount of $347,698.40.  The remainder of the interest is calculated at the New York Statutory judgment interest rate of 9% from April 4, 2016 through January 12, 2017.

Accordingly, the Noteholders are damaged in the amount of $8,677,552.46 inclusive of interest for breach of the Notes through January 12, 2017. This amount puts the aggrieved Noteholders in the same position had Bohai complied with its payment obligations.

### B.    "Put" Option

Pursuant to Section 5(a)(i) of the SPA, many Noteholders converted their Notes into shares in Bohai.  As a result of Bohai "going dark," these Shareholders cannot recoup their investment as they are deprived of a market to sell their investment. Therefore, Plaintiffs requested the option to "put" their shares at fair market value in the company.

In the absence of information regarding Bohai's fair value (i.e. failure to file financials with the SEC), looking to historic book value and comparables in a similar space is appropriate.  Indeed, an analysis of the current market capitalization of comparable companies divided by their book value provides a multiplier that, when applied to the last reported book value of Bohai, yields the best indication of fair market value for the Company.

6

Pursuant to the last 10-Q filed by Bohai on May 20, 2014, for the quarter ending September 30, 2014, it reported $203,660,957 in total assets and $62,100,627 in total liabilities, resulting in a book value of $141,560,330.  *Id.*  **Exhibit F**.  Bohai also reported at that time 19,522,865 shares outstanding.  *Id.*  ¶ 22.  Thus, the book value divided by the shares outstanding, results in a book per share value of $7.25.  *Id.*  ¶ 22.

As set forth in the Chema Affidavit, Plaintiffs have identified eight comparable companies in the similar space of production, manufacturing, and distribution of herbal pharmaceuticals.  *Id.*  ¶ 24.  The average most recent quarter price/book valuation of the eight comparable companies is 4.83.  *Id.*  **Exhibits G-N**.  Applying this multiple to the price to book ratio from Bohai's most recent 10-Q filing yields a price per share of $35.04.  *Id.*

### C.    Attorneys' Fees and Costs

Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to the transaction documents.  Specifically, Section 11 of the Notes provide that "The Company agrees that, in the event of an Event of Default, to reimburse the Holder [the Investors] for all reasonable costs and expenses (including reasonable legal fees of one counsel) incurred in connection with the enforcement and collection of this Note." *See Id.*  **Exhibit A**. Similarly, Section 9.9 of the SPA states

> [Bohai] agrees to indemnify an hold harmless each Investor… from and against any and all losses, claims, damages, liabilities and expenses (including without limitation reasonable attorney fees and disbursements and other expenses incurred in connection with investigating, preparing or defending any action, claim or proceeding, pending or threatened and the costs of enforcement thereof) (collectively, "Losses") to which such Person may become subject as a result of any breach of representation, warranty, covenant or agreement made by or to be performed on the part of [Bohai] under the Transaction Documents, and will

7

reimburse any such Person for all such amounts as they are
incurred by such Person.

*See Id.*  **Exhibit O**.

As a result of the successful prosecution of Defendant's breach of the

Notes and SPA, and its pursuit to recover funds invested in Bohai, Plaintiffs incurred

attorneys' fees and costs.  *See* Affirmation of David Graff dated January 12, 2017

("Graff Aff.") ¶ 18.  The attorneys' fees and costs requested herein were incurred for

services rendered by Anderson Kill P.C.  The fees requested are reasonable in light of

the substantial work that was conducted on this matter.  This work included, but is not

limited to, reviewing all the transaction documents, as well as conducting background

research on Bohai and all Investors named in the action, drafting a comprehensive

complaint, preparing for and attending a mediation, opposing Defendant's motion to

dismiss, filing a motion for default judgment, and drafting and filing this inquest

memorandum with supporting affidavits.  *Id.* ¶ 19.

Accordingly, Plaintiffs request attorneys' fees and cost in the amount of

$137,578.50 and $9,600.79 respectively, which were incurred from March 20, 2015

through the date of this submission.  *Id.* ¶ 18.  The billing rates for the attorneys, law

clerks and paralegals working on the instant litigation ranged from $150 per hour for a

paralegal to $375 per hour for a partner.  *Id.* ¶ 20.

## **LEGAL ARGUMENT**

The Court of Appeals for the Second Circuit has held that to plead a viable

breach of contract claim, a "complaint need only allege (1) the existence of an

agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of

contract by the defendant, and (4) damages."  *Eternity Global Master Fund Ltd. v.*

8

*Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004).  It is not necessary to state

each element individually because of the notice pleading standard embodied in Fed. R.

Civ. P. 8.  *Kempf v. Mitsui Plastics*, 96 Civ. 1106, 1996 U.S. Dist. LEXIS 17240

(S.D.N.Y. Nov. 18, 1996)

      **A.**    **Noteholders' Damages on the Notes**

      "Damages are intended to return the parties to the point at which the

breach arose and to place the non-breaching party in as good a position as it would

have been had the contract been performed."  *Seidman v Indus. Recycling Props., Inc.*,

967 N.Y.S. 2d 77, 78 (App. Div. 2013); *see also Agbaje v. Bah*, 09 Civ. 6201, 2010 U.S.

Dist. LEXIS 142529, at *8 (S.D.N.Y. Dec. 23, 2010).  Specifically, "the measure of

damages for the breach of a contract to pay money at a stipulated time is, in the

absence of any special circumstances in the contemplation of the parties at the time of

the execution of the contract, legal interest as damages for the temporary loss of the

use of his or her money."  36 NY Jur Damages § 46 (2nd 2014).  Furthermore, "persons

who occupy or intend to assume the relation of debtor and creditor may contract for the

payment of interest within the limits allowed by statute, and such a contract is controlling

because interest expressly reserved in a contract is recoverable as of right."  72 NY Jur

Interest and Usury § 9 (2nd 2014).

      Bohai's liability for, *inter alia*, breach of contract has already been

established.  Specifically, Bohai's failure to meet the payments required in the Notes

and subsequent amendments establishes this breach.  On or about January 5, 2010,

the Investors and Bohai entered into the Notes whereby Bohai promised to pay the

Investors the principal plus interest at eight percent (8%) per annum by on January 5,

2012.  Bohai failed to make these payments.  Accordingly the parties amended the

9

Notes five times to, inter alia, extend the maturity to April 5, 2016 and the interest rate to twelve percent (12%).

However, Bohai failed to make the required payments again, therefore, Bohai is in material breach.  Similarly, pursuant to Section 6(d) of the Notes, Bohai was required to make all required filings with the SEC as long as the Notes were still outstanding.  However, subsequent to the execution of the Notes, Bohai ceased filing with the SEC: the last filing occurred on November 25, 2014.  This constitutes a further material breach by Bohai.

Due to Bohai's breach, the current Noteholders are entitled to the Principal amount plus all unpaid interest.  "Damages for breach of contract are determined by calculating the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract.  Additionally, under New York law, where the breach of contract is a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest." *Gulf Coast Bank & Tr. Co. v. ASESD, LLC*, No. 11-CV-5023 (RMB) (RLE), 2014 U.S. Dist. LEXIS 168327, at *10 (S.D.N.Y. Aug. 29, 2014) (internal citations omitted) (based on the submissions by plaintiff, the Court recommended damages on the loan for breach of contract as well as interest).

Here Noteholders are owed the Principal amount of $4,987,020.59 together with interest through April 4, 2016 in the amount of $3,342,533.47, for monies due and owed under the Notes, plus statutory interest from the date of default to present at the contract rate of 9% per annum.

10

**B.**   **Shareholder's Damages and The Legal Precedent Granting a "Put" Option**

In recent years it has been a common theme, particularly of Chinese companies in the United States to "go dark" and turn their back on the shareholders. This has been publically noted by numerous sources.  *See* "Graff Aff. **Exhibit A** (Wall Street Journal article, "Tide Turns After a Flood of Chinese Listings," dated December 5, 2012); **Exhibit B** (Reuters Article, "Chinese Companies Retreat from U.S. Listings as Scrutiny Mounts," dated January 13, 2013).

In cases such as this, Courts have routinely awarded a "put" option because the Defendant Chinese companies "go dark" and abandon the U.S. markets; accordingly, the shareholders cannot ascertain a fair value of their respective investments causing complete illiquidity of those securities in the market.  *See Id.* **Exhibits C-I** (collectively the "China Cases").  In support of their request for a "put option", the plaintiffs in the China Cases argued that the decision to de-list or "go dark" is wrongful when it is taken for an inequitable purpose.  *See*, *e.g.*, *Hamilton v. Nozko*, 1994 Del. Ch. Lexis 139, at *19-20 (Del. Ch. Jul. 26, 1994); *Seagraves v. Urstadt Property Co., Inc.*, 1989 Del. Ch. Lexis 155, at *1142 (Del. Ch. Nov. 13, 1989).[2]

The Chancery Court in the China Cases (including Vice Chancellors Laster, Parsons, Noble, and Master LeGrow) agreed with the plaintiff shareholders and granted the equitable remedy of the "put" option under the court's broad powers.[3]  *Id.*

---

[2]   "It goes without saying that, while the Court is not obligated to follow Delaware law in this matter, many courts -- including this one -- appropriately look to the views of Delaware's learned jurists when analyzing issues of corporate law."  *RSL Communs. PLC v. Bildirici*, 649 F. Supp. 2d 184, 205-06 (S.D.N.Y. 2009).

[3]   The Court also awarded attorneys' fees and costs, as well as appointing a special purpose receiver.  The special purpose receiver in each matter was granted broad powers to

**Exhibit C** (March 20, 2013 order granting plaintiff Peter E. Deutsch's request for a "put"

option in the matter *Deutsch v. ZST Digital Networks*, C.A. No. 8014-VCL); *see also*

**Exhibit D** *In re Yinlips Technology Inc. a/k/a Yinlips Digital Technology Co. Ltd.*

*Litigation*, C.A. No. 8865-VCP (order dated January 7, 2014)(order dated February 27,

2014); **Exhibit E** *In re Southern China Livestock Litigation*, C.A. No. 8851-VCN (order

dated January 17, 2014)(order dated March 14, 2014); **Exhibit F** *Pope Investments v.*

*Shengtai Pharmaceutical, Inc.*, C.A. No. 9122-ML (Del. Ch. April 3, 2014) (order dated

April 3, 2014) ("SGTI"); **Exhibit G** *Trillion Growth China, LP v. NIVS Intellimedia*

*Technology Group, Inc.* C.A. No. 9226-ML (order dated September 11, 2014)(order

dated November 13, 2014) ("NIVS").  In fact, the SGTI Court stated "SGTI's disregard

for the plaintiff's rights as a stockholder has left the plaintiff with essentially no way to

exit the company and, therefore, although extraordinary, I think that granting a put right

and appointing a receiver for the purpose of obtaining compliance with this Court's

orders allows the plaintiff to exit its investment in a company that has shown it does not

care to recognize the rights of its stockholders."  *Id.*  **Exhibit H** Transcript dated April 2,

2014 at p. 18.

      Further, the Supreme Court of New York, New York County, recently

granted similar relief in the matter *Peter Schiff et. al. v. China Nutrifruit Group Limited*.

The facts and law in the *China Nutrifruit* matter are nearly identical to those in the

instant litigation.  *Id.*  **Exhibit I** (CNGL Judgment).

      Accordingly, as a matter of law, the Shareholders respectfully submit that

Bohai should be required to redeem their shares, at their option, for fair value.  Indeed,

---

enforce the orders and judgments of the court (*i.e.* the ability to seize all assets of the company
including but not limited to the company's subsidiaries through corporate resolutions).

a court-ordered buyout is a widely-employed remedy in the context of non-public "close" corporations where a stockholder-plaintiff has no ability to sell her shares and receive fair value.  *See G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 244 (Ind. 2001) (affirming court-ordered buyout and reasoning that the stockholder otherwise "does not have the option of voting with its feet by selling its shares in a public market for a presumptively fair price.").  In the absence of information regarding Bohai's fair value (*i.e.* failure to file financials with the SEC), looking to historic book value[4] and comparables in a similar space is appropriate.  Indeed, an analysis of the current market capitalization of comparable companies divided by their book value provides a multiplier that, when applied to the last reported book value of Bohai, yields the best indication of fair market value for the Company.

As set forth in the Chema Affidavit, Plaintiffs have identified eight comparable companies in the similar space of production, manufacturing, and distribution of herbal pharmaceuticals with an average price to book multiple of 4.83.  *See* Chema Aff ¶ 24.  Applying this multiple to the price to book ratio from Bohai's most recent 10-Q filing results in a price per share of $35.04.  *Id.*

Based on the foregoing, Plaintiffs respectfully request that the Court grant their request for damages in the form of an award to "put" their shares at a price of $35.04 per share.

---

[4]      Although book value "can be useful" as a conservative "indicator of value" it "tends to undervalue a business as a going concern[.]" *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 476 (Del. Ch. 2011).

### C.      Attorneys' Fees and Costs

The Supreme Court has recognized three specific exceptions that have also been applied in cases interpreting New York law:  "(1) when a statute or enforceable contract provides for attorneys' fees; (2) where the prevailing party confers a common benefit upon a class or fund, and (3) when a losing party willfully disobeys a court order or has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *V.S. Int'l, S.A. v. Boyden World Corp.*, No. 90 Civ. 4091 (PKL), 1993 U.S. Dist. LEXIS 2586 at *40, (S.D.N.Y. Mar. 4, 1993) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-59 (1975)). Both Section 11 of the Notes and Section 9.9 of the SPA call for the reimbursement of reasonable attorneys' fees and other costs and expenses incurred for Bohai's default.  Thus, Plaintiffs are entitled to attorneys' fees and costs pursuant to these contract provisions as an exception to the American rule.

The fees requested are reasonable in light of the substantial work that was conducted on this matter.  This work included, but is not limited to, reviewing all the transaction documents, as well as conducting background research on Bohai and all Investors named in the action, drafting a comprehensive complaint, preparing for and attending a mediation, opposing Defendant's motion to dismiss, filing a motion for default judgment, and an inquest supporting affidavits.  Graff Aff. At ¶ 19.  The billing rates for the attorneys, law clerks and paralegals working on the instant litigation ranged from $150 per hour for a paralegal to $375 per hour for a partner.  *Id.*  ¶ 20.  These rates constitute reasonable rates because they are not only a substantial discount from ordinary billing rates for Anderson Kill P.C., but are also a substantial discount for attorneys practicing in New York City.  *See Three60 LLC vs. Local Ocean Holdings, LLC*, Index No. 652188/12, 2014 N.Y. Misc. LEXIS 5819, *1 (N.Y. Sup. Ct. Feb. 20,

14

2014) (finding partners with rates between $695-$725 per hour; senior associates rates between $525-$560 per hour; and, other associates between $395-$510 per hour, for a large Manhattan commercial litigation law firm reasonable).

As a result of the successful prosecution of Defendant's breach of the Notes and the SPA its pursuit to recover funds invested in Bohai, Plaintiffs incurred attorneys' fees and costs.  The attorneys' fees and costs requested herein were incurred for services rendered by Anderson Kill P.C.  The total fees and costs to date is $147,179.30.  *See* Graff Aff. at **Exhibit 22**.

## **CONCLUSION**

Wherefore, Plaintiffs respectfully request the Court enter an order for damages in the amount of $8,677,552.46 on the principal and interest on the Notes, a "put" option at the amount of $35.04 per share, and $147,174.30 for attorneys' fees and costs.

Dated: January 12, 2017
     New York, New York

Respectfully submitted,

**ANDERSON KILL P.C.**

/s/ David Graff
David Graff, Esq.
Christopher Ayers, Esq.
Rachael Kierych, Esq.
1251 Avenue of the Americas
New York, New York  10020
Tel.:  212-278-1000
Fax:  212-278-1733

*Attorneys for Plaintiffs*