USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __3/9/2018_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EURO PACIFIC CAPITAL, INC.,           :
individually and in its capacity as investor   :
representative and attorney-in-fact for       :
BRUCE WALKER REVENEL, *et al.*,       :
                                         :
                Plaintiffs,              :
                                         :
        -v.-                             :
                                         :
BOHAI PHARMACEUTICALS GROUP,   :
INC.,                                    :
                                         :
                Defendant.               :
---------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

15-CV-4410 (VM) (JLC)

**James L. Cott, United States Magistrate Judge.**

**To the Honorable Victor Marrero, United States District Judge:**

On April 15, 2016, the Court entered default in this breach of contract action in favor of plaintiff Euro Pacific Capital, Inc., individually and in its capacity as investor representative and attorney-in-fact for numerous individual investors, against Defendant Bohai Pharmaceuticals Group, Inc.  The case was subsequently referred to me to conduct an inquest into damages.  For the reasons set forth below, I recommend granting Euro Pacific's request for $6,843,549 in damages, as well as prejudgment interest on that award at a rate of 9% per annum beginning April 5, 2016 and continuing until the date of entry of judgment.  I also recommend that Euro Pacific be awarded $107,194.40 in attorneys' fees, and $9,793.87 in costs.

## I.   BACKGROUND

**A.   <u>Facts</u>**[1]

The following facts, which are drawn from a review of Euro Pacific's pleadings and supported by its submissions related to this inquest, are deemed established for the purpose of determining the damages to which it is entitled. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor [.]") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).[2]

Euro Pacific is an investment company incorporated under the laws of California with its principal place of business in Connecticut. Supp. Chema Aff. ¶ 6. Bohai is a Nevada company with its principal place of business in China. Supp.

---

[1] For a full recitation of the facts and history of the case, the reader is directed to Judge Marrero's decision denying Bohai's motion to dismiss, *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2016 WL 297311 (S.D.N.Y. Jan. 21, 2016), my initial Report and Recommendation ("Initial Report"), *Euro Pac. Capital, Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM) (JLC), 2017 WL 3208036 (S.D.N.Y. July 28, 2017), and Judge Marrero's order directing me to issue a revised Report and Recommendation, dated October 26, 2017 ("October 26 Order") (Dkt. No. 62).

[2] Specifically, the facts are taken from the following documents and accompanying exhibits: (1) the Amended Complaint, dated Sept. 10, 2015 ("Compl.") (Dkt. No. 13); (2) Affidavit of Peter Chema in Support of Plaintiffs' Motion for Inquest, dated Jan. 13, 2017 ("Chema Aff.") (Dkt. No. 46); (3) Affirmation of David Graff in Support of Plaintiffs' Motion for Inquest, dated Jan. 13, 2017 ("Graff Aff.") (Dkt. No. 47); (4) Affirmation of David Graff in Support of Objection, dated Oct. 11, 2017 ("Supp. Graff Aff.") (Dkt. No. 60); (5) Affidavit of Peter Chema in Support of Objection, dated Oct. 11, 2017 ("Supp. Chema Aff.") (Dkt. No. 61); and (6) Declaration of Peter Chema, dated Feb. 16, 2018 ("Chema Decl.") (Dkt. No. 67).

Chema Aff. ¶ 4.  Bohai produces, manufactures, and distributes herbal pharmaceuticals.  Supp. Chema Aff. ¶ 5.

On or about January 5, 2010, a group of 124 investors represented by Euro Pacific invested $11,100,000.00 in Bohai.  Supp. Chema Aff. ¶¶ 2, 8; Compl. ¶ 12. The investment was carried out through the purchase of promissory notes (the "Notes").  Compl. ¶ 11.[3]  In exchange for $2.00, investors were issued a $2.00 convertible note (a "Note"), with each Note to be repaid in full by January 5, 2012 with 8% annual interest.  *Id.* ¶¶ 11, 15; Supp. Chema Aff. ¶ 13; Supp. Chema Aff. Ex. 4 (Note).  Euro Pacific also entered into a Securities Purchase Agreement with Bohai, which governed the purchase of the Notes.  Compl. ¶ 19; Supp. Chema Aff. Ex. 3 (Securities Purchase Agreement).  The Securities Purchase Agreement was also signed by each investor.  Supp. Chema Aff. ¶ 9; Supp. Chema Aff. Ex. 10 (signed pages).

On or about December 28, 2011, a week before the Notes' original maturity date, Euro Pacific and Bohai amended the Notes, extending the maturity date to April 5, 2012 and increasing the interest rate to 12%.  Supp. Chema Aff. ¶ 13; Supp. Chema Aff. Ex. 12 (first amendment to Notes).  Over the course of the next two and

---

[3] The investment transaction consisted of a number of documents, not all of which are necessary to consider for the purpose of conducting this inquest.  In addition to the Notes and Securities Purchase Agreement discussed herein, Euro Pacific has also submitted copies of a private placement memorandum, a common stock purchase warrant that was issued with each Note, a registration rights agreement, a securities escrow and pledge agreement, a closing escrow agreement, and a placement agent warrant.  *See* Supp. Chema Aff. ¶ 9 (listing documents); Supp. Chema Aff. Exs. 2, 5–9 (documents).

a half years, Euro Pacific and Bohai agreed to four more amendments, each extending the maturity date and maintaining an interest rate of 12%.  Supp. Chema Aff. ¶¶ 14–17; Supp. Chema Aff. Ex. 13–16 (second, third, fourth, and fifth amendments to Notes).  The maturity date set by the fifth and final amendment was April 5, 2016.  Supp. Chema Aff. ¶ 17; Supp. Chema Aff. Ex. 16 (providing April 5, 2016 date).

Between April 2012 and March 2014, Bohai made ten payments on the Notes, totaling $4,284,049, which were first applied to the interest and then to the principal.  Supp. Chema Aff. ¶¶ 20–21.[4]  However, after March 2014, Bohai stopped making payments on the Notes.  Supp. Chema Aff. ¶¶ 20–22.  As of the maturity date of April 5, 2016, a total of $6,843,549 was due to the noteholders, comprised of $4,987,021 in outstanding principal and $1,856,528 in unpaid interest.  Supp. Chema Aff. ¶ 26; Chema Decl. ¶¶ 7–8 (citing to Supp. Chema Aff. Ex. 18 at 4) (tables listing outstanding principal and unpaid interest owed to noteholders as of maturity date).[5]

---

[4] Bohai paid much of the interest due under the Notes through the first four amendments.  Chema Decl. ¶ 4.  As of the maturity date under the fourth amendment, April 21, 2014, only $684,237 in unpaid interest was due.  *Id.*

[5] The two tables were filed as an attachment to Chema's declaration.  However, Chema refers to the tables as Exhibit 18 to his supplemental affidavit, presumably because the tables constitute a revised version of the table submitted as Exhibit 1 to the supplemental affidavit.  Chema Decl. ¶¶ 2, 7–8.  For this reason, I also refer to the tables as Exhibit 18, and refer to the calculations therein throughout this revised Report and Recommendation.  For example, while Chema's supplemental affidavit, ¶ 26, and its Exhibit 1 indicate that a total of $4,987,020.59 in unpaid principal is due, according to Exhibit 18, the total unpaid principal is $4,987,021 (forty-one cents more).

B. **Procedural History**

On June 8, 2015, Euro Pacific filed this breach of contract action against

Bohai.  Compl. ¶¶ 40–72.[6]  Bohai initially appeared with counsel and engaged in

motion practice.  October 26 Order at 1.  Subsequently, however, the Court granted

Bohai's attorney's motion to withdraw.  *Id.* at 2.  Bohai having failed to answer or

otherwise make an appearance following the withdrawal of its counsel, the Court

entered default judgment against it on April 15, 2016.  *Id.*

Almost nine months later, Euro Pacific moved for an inquest on damages.

Motion for Inquest, dated January 13, 2017 (Dkt. No. 44).[7]  In its motion, Euro

Pacific sought damages of $8,677,552.46 for the outstanding principal and unpaid

interest on the Notes, as well as attorneys' fees and costs of $147,174.30.  *Id.* at 4.[8]

---

[6] In its original complaint, Euro Pacific asserted claims for breach of contract, breach of covenant, and securities fraud.  Verified Complaint, dated June 8, 2015 (Dkt. No. 1), ¶¶ 36–82.  The parties subsequently stipulated to Euro Pacific's filing an amended complaint.  Stipulation, dated Sept. 3, 2015 (Dkt. No. 11).  In its amended complaint, Euro Pacific did not renew its securities fraud allegations but did assert claims for breach of contract and breach of covenant.  Compl. ¶¶ 40–72.  However, as noted in my Initial Report, in its inquest papers, Euro Pacific seeks damages and provides legal support exclusively for breach of contract causes of action.  *Euro Pac. Capital, Inc.*, 2017 WL 3208036, at *3 n.5; *see also* Memorandum of Law, dated January 13, 2017 ("Pl. Mem."), at 8–10 (Dkt. No. 45).  Thus, based on the inquest papers, I assume that Euro Pacific is requesting damages only for breach of contract.

[7] That same day and in support of its motion, Euro Pacific also filed a memorandum of law, an affidavit from its general counsel, Peter Chema, and an affirmation from counsel in the case, David Graff.

[8] In its inquest papers, Euro Pacific also requested a "put" option as a remedy for a breach of contract claim it brought on behalf of certain investors who had converted their Notes into shares.  Euro Pacific argued that, as a result of Bohai "going dark" and ceasing to make required filings with the SEC, the investors had not recouped

Following a referral to conduct an inquest, I recommended that the Court deny the requests for monetary damages and attorneys' fees and costs without prejudice to renewal, on the grounds that Euro Pacific had not submitted sufficient evidence to establish compensatory damages with reasonable certainty and had failed to establish that the requested attorneys' fees and costs were reasonable. *Euro Pac. Capital, Inc.*, 2017 WL 3208036, at *8–14.

After receiving two extensions, *see* Dkt. Nos. 55 & 58, on October 11, 2017, Euro Pacific timely filed its objections to my Initial Report. Objections (Dkt. No. 59). In support of its objections, Euro Pacific submitted a supplemental affidavit from Chema and a supplemental affirmation from Graff.

On October 26, 2017, the Court agreed that, based on the record before it, compensatory damages and attorneys' fees and costs should be denied. October 26 Order at 5–6. The Court then directed that I receive into evidence Chema's supplemental affidavit and Graff's supplemental affirmation with accompanying exhibits, reconsider the inquest motion upon the new record, and issue a revised Report and Recommendation. *Id.* at 7. Upon review of Chema's supplemental affidavit, I found that it did not provide a sufficient basis upon which to determine damages for interest with reasonable certainty, and ordered a further submission.

---

their investment, and therefore were entitled to a put option, *i.e.*, the right to force Bohai to purchase their shares at a price of $35.04 per share. Motion for Inquest at 4; Pl. Mem. at 6–7. However, as I concluded in the Initial Report and as Judge Marrero found in his order, such a remedy is not available in these circumstances under the applicable law. *Euro Pac. Capital, Inc.*, 2017 WL 3208036, at *9–12; October 26 Order at 3–4.

Order, dated Feb. 13, 2018, Dkt. No. 66.  Accordingly, on February 16, 2018, Euro

Pacific filed a declaration of Peter Chema to address the Court's expressed concerns.

## II.    DISCUSSION

Euro Pacific seeks an award of $6,843,549—which is the amount of

outstanding principal and unpaid interest due to the investors on the date of the

Notes' maturity—as well as prejudgment interest on that award, $136,578.50 in

attorneys' fees, and $9,793.87 in costs.

## A.    <u>Breach of Contract Damages</u>

"Even when a default judgment is warranted based on a party's failure to

defend, the allegations in the complaint with respect to the amount of the damages

are not deemed true.  The district court must instead conduct an inquiry in order to

ascertain the amount of damages with reasonable certainty." *Am. Jewish Comm. v.*

*Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15,

2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d

Cir. 1999)), *adopted by*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).  A plaintiff

"bears the burden of establishing its entitlement to recovery and thus must

substantiate its claim with evidence to prove the extent of its damages." *Id.* at *3

(alterations omitted) (quoting *Dunn v. Advanced Credit Recovery Inc.*, No. 11-CV-

4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012)).  "[A] plaintiff

must submit sufficient evidence, in the form of detailed affidavits and other

documentary materials to enable the district court to 'establish damages with

reasonable certainty.'" *Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc.*, No. 13-CV-

7

5467 (VSB) (JLC), 2014 WL 1396543, at *2 (S.D.N.Y. Apr. 11, 2014) (quoting

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111

(2d Cir. 1997)) (internal citations omitted), *adopted by*, 2014 WL 5051275 (S.D.N.Y.

Oct. 8, 2014); *see also* Fed. R. Civ. P. 55(b)(2).

   The Court has previously determined that New York law applies,[9] and

"[u]nder New York law, a successful plaintiff in a breach of contract action is

entitled to damages in the 'amount necessary to put the plaintiff in the same

economic position he would have been in had the defendant fulfilled his contract.'"

*Am. Jewish Comm.*, 2016 WL 3365313, at *5 (quoting *Scholastic, Inc. v. Snap TV,*

*Inc.*, No. 09-CV-4349 (GBD) (GWG), 2011 WL 1330246, at *3 (S.D.N.Y. Apr. 8,

2011)).  Where damages are susceptible to simple mathematical calculation and the

plaintiff provides a "sufficient basis from which to evaluate the fairness" of the

requested damages, no evidentiary hearing is necessary.  *Id.* at *4.

   Euro Pacific having satisfactorily pled each of the elements of a cause of

action for breach of contract in its complaint, *Euro Pac. Capital, Inc.*, 2017 WL

3208036, at *7, I focus on the sufficiency of the "evidence, in the form of detailed

affidavits and other documentary materials to enable the [ ] court to 'establish

---

[9] The Notes and the Securities Purchase Agreement each contain "substantially the same" forum selection clause, and the Court previously found that "the parties explicitly contracted to resolve all disputes arising from their business relationships in the courts of New York, New York and governed by New York law." *Euro Pac. Capital Inc*, 2016 WL 297311, at *2 & *5.

damages with reasonable certainty.'" *Nat'l Photo*, 2014 WL 1396543, at \*2 (quoting *Transatlantic*, 109 F.3d at 111) (internal citation omitted).

I find that the supplemental Chema Affidavit and its accompanying exhibits provide sufficient evidence to establish damages with reasonable certainty.  Euro Pacific has provided a copy of the Securities Purchase Agreement that has been executed by representatives of both parties,[10] a list of the investors who signed the Securities Purchase Agreement, and copies of each investor's executed signature page.  Supp. Chema Aff. Ex. 3 at 38–41 & Ex. 10.  Euro Pacific has also submitted a copy of the original Note and a copy of each amendment, as well as a list of investors that indicates how many Notes each investor purchased.  Supp. Chema Aff. Ex. 3 at 38–41 & Exs. 4, 12–16.  Euro Pacific has supplied Chema's sworn statement that Bohai made no payments after March 2014 and still owes $4,987,021 in outstanding principal and an additional amount in unpaid interest.  Supp. Chema Aff. ¶¶ 20, 26; Ex. 18 (updated outstanding principal and unpaid interest).  Euro Pacific has also provided a table indicating how much outstanding principal and unpaid interest were due to each investor as of the Notes' maturity date, for a total of $4,987,021 in outstanding principal and $1,856,528 in unpaid interest.  Supp. Chema Aff. Ex. 18.[11]

---

[10] The Securities Purchase Agreement is signed by representatives from Euro Pacific and Link Resources, Inc.  Supp. Chema Aff. Ex. 3 at 36.  According to the complaint, Bohai was formerly known as Link Resources, Inc.  Compl. ¶ 8.

[11] These submissions provide significantly more evidence than Euro Pacific's initial submissions in support of its inquest motion.  *See Euro Pac. Capital, Inc.*, 2017 WL 3208036, at \*8 (discussing Euro Pacific's submission of an unsigned Securities

Euro Pacific's evidence—in particular, Chema's supplemental affidavit, to which the Security Purchase Agreement, list of investors, executed signature pages, a Note, amendments to the Notes, and a table of outstanding principal and unpaid interest are attached—is sufficient to enable the Court to establish with reasonable certainty that the investors on whose behalf Euro Pacific seeks to recover made an investment through a series of promissory notes and that a total of $6,843,549 in outstanding principal and unpaid interest on the Notes came due on April 5, 2016 and was never paid. *See, e.g.*, *Putnam Bridge Funding III LLC v. Jenkins*, No. 16-CV-7012 (AT) (DF), 2017 WL 3267934, at *6 (S.D.N.Y. July 10, 2017) (finding, in breach of contract action, that plaintiff's submission of promissory note as well as corroborating correspondence and financial records established with reasonable certainty that plaintiff was entitled to recover unpaid principal due under promissory note), *adopted by*, 2017 WL 3267752 (S.D.N.Y. July 31, 2017); *Scharnikow v. Siracuse*, No. 15-CV-6991 (DRH) (SIL), 2016 WL 7480360, at *5 (E.D.N.Y. Dec. 6, 2016) (finding, in breach of contract action, that plaintiff's submission of affidavit, correspondence, and financial records met burden of proving damages sought for principal and interest due under promissory notes), *adopted by*, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016); *Customers Bank v. Anmi, Inc.,* No. 11-CV-7992 (AJN), 2014 WL 842577, at *6 (S.D.N.Y. Mar. 3, 2014) (adopting report and recommendation finding, in breach of contract action, that plaintiff's

---

Purchase Agreement, a blank list of purported investors, a Note with no explicit links to the alleged noteholders, and one blank and unexecuted investor signature page).

submission of promissory note, uncontested affidavit and financial records entitled plaintiff to recover damages for outstanding principal due under promissory note).

Therefore, in order to "put the plaintiff in the same economic position [it] would have been in had the defendant fulfilled [its] contract," *Am. Jewish Comm.*, 2016 WL 3365313, at *5, Euro Pacific is entitled to damages in the amount of $6,843,549, comprised of $4,987,021 in outstanding principal and $1,856,528 in accrued, unpaid interest pursuant to the terms of the Notes.

## B.    **Prejudgment interest**

Euro Pacific requested prejudgment interest on its breach of contract claim in its complaint, *see* Compl. ¶ 46 & at 18, in its motion for default, *see* Motion for Default, dated April 13, 2016 (Dkt. No. 39), at 6, and when it moved for an inquest. Motion for Inquest at 4.

"Under New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'" *Midwood Junction v. Puerto del Sol Int'l Inv., S.A.*, No. 15-CV-5181 (RA) (SN), 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016) (quoting *U.S. Naval Inst. v. Charter Comm'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)) (citing N.Y. Civil Practice Law and Rules ("CPLR") § 5001), *adopted by*, 2017 WL 1857248 (S.D.N.Y. May 4, 2017). Section 5001 of the CPLR provides, in part, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract," and that the "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed

11

from the date incurred." CPLR § 5001 (a)–(b). "In an action on a promissory note, CPLR [§] 5001 permits a creditor to recover prejudgment interest *from the date on which each payment of principal or interest became due under the terms of the note* until the date on which liability is established." *Gliklad v. Cherney*, 132 A.D.3d 601 (1st Dep't 2015) (emphasis added). In New York, the statutory rate for prejudgment interest is 9% per annum. CPLR § 5004.

Accordingly, I find Euro Pacific is entitled to prejudgment interest at the rate of 9% per annum from April 5, 2016—the date on which the payment and interest became due under the terms of the fifth and final amendment to the Notes—until the date of entry of judgment.

## C. <u>Attorneys' Fees and Costs</u>

Euro Pacific seeks $136,578.50 in attorneys' fees and $9,793.87 in costs incurred by Anderson Kill, P.C. Supp. Graff Aff. ¶ 18, *see also* Compl. at 19 (request for attorneys' fees and costs); Motion for Inquest at 4 (same).[12] In my Initial Report, I found that the evidence submitted did not establish that the fees and costs sought were reasonable, particularly because Euro Pacific had failed to submit any individual time records for its 14 timekeepers or any information about its attorneys' experience, reputation, and ability. *Euro Pac. Capital, Inc.*, 2017 WL 3208036, at *12–14. Subsequently, Euro Pacific submitted David Graff's

---

[12] While Euro Pacific originally sought $147,174.30 in fees and costs, Motion for Inquest at 4, in its supplemental submission, it seeks $146,372.37 in fees and costs, comprised of $136,578.50 in fees and $9,793.87 in costs. Supp. Graff Aff. ¶ 18.

supplemental affirmation, annexed to which are time records and biographies of the attorneys who worked on the matter.  Suppl. Graff Aff. ¶¶ 13, 15; Exs. 1 & 2.

### 1.     Entitlement to fees and costs

"The awarding of attorneys' fees in diversity cases is governed by state law." *Glassman-Brown v. Pouring Wine, LLC*, No. 14-CV-03763 (TPG) (KNF), 2015 WL 5853802, at *7 (S.D.N.Y. Aug. 5, 2015) (quoting *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985)) (alterations omitted), *adopted in part*, 2015 WL 5853807 (S.D.N.Y. Oct. 7, 2015).  "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."  *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 610 (2d Cir. 2014) (quoting *NetJets Aviation, Inc. v. LHC Comms., LLC,* 537 F.3d 168, 175 (2d Cir. 2008)) (summary order).

Section 11 of the Note states:

> [Bohai] agrees that, in the event of an Event of Default, to reimburse the Holder for all reasonable costs and expenses (including reasonable legal fees of one counsel) incurred in connection with the enforcement and collection of this Note.

Supp. Chema Aff. Ex. 4 at 11.  Section 6(a) of the Note explains that an Event of Default occurs if principal or accrued interest becomes due and is not paid.  Supp. Chema Aff. Ex. 4 at 5.

Section 9.9 of the Securities Purchase Agreement states:

> [Bohai] agrees to indemnify and hold harmless each Investor . . . from and against any and all losses, claims,

> damages, liabilities and expenses (including without
> limitation reasonable attorney fees and disbursements
> and other expenses incurred in connection with
> investigating, preparing or defending any action, claim or
> proceeding, pending or threatened and the costs of
> enforcement thereof) . . . to which [each investor] may
> become subject as a result of any breach of representation,
> warranty, covenant or agreement made by or to be
> performed on the part of [Bohai] under the Transaction
> Documents, and will reimburse any such Person for all
> such amounts . . . .

Supp. Chema Aff. Ex. 3 at 33.

The Notes and the Securities Purchase Agreement provide for, in the event of

non-payment, an award of those reasonable attorneys' fees and costs that are

incurred in connection with enforcement and collection.  Sections 6 and 11 of the

Notes entitle the investors to such fees, and the Securities Purchase Agreement

similarly provides for the reimbursement of investors for reasonable fees and

expenses incurred in connection with claims brought as a result of breach of

agreements made under the Notes.  The plain language of these provisions is thus

sufficiently clear so as to entitle Euro Pacific to attorneys' fees and costs.

In my Initial Report, I took issue with Euro Pacific's failure to explain how

the Notes provided for fees for 14 timekeepers given that Section 11 refers to "one

counsel." *Euro Pac. Capital, Inc.*, 2017 WL 3208036, at *12 (citing *Euro Pac.

Capital, Inc. v. Yayi Int'l Inc.,* No. 15-CV-359 (VSB) (KNF), 2017 U.S. Dist. LEXIS

22245, at *37-38 (S.D.N.Y. Feb. 13, 2017)).  However, in its objection, Euro Pacific

cites to Black Law's Dictionary, which "defines 'counsel' as 'one or more lawyers who

having the authority to do so, give advance about legal matters . . . in the singular,

14

also termed counselor.'"  Objection at 17 (alteration omitted).  I am satisfied that, particularly read in conjunction with the Section 9.9 of the Securities Purchase Agreement, Section 11 is sufficiently clear and provides for an award of reasonable fees for multiple attorneys.

### 2.    Request for Fees

"The party seeking fees bears the burden of demonstrating that its requested fees are reasonable."  *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Golden Dev. & Constr. Corp.*, No. 17-CV-1051 (VSB) (JLC), 2017 WL 2876644, at *5 (S.D.N.Y. July 6, 2017) (quoting *1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc.*, No. 13-CV-2608 (JGK), 2014 WL 840965, at *10 (S.D.N.Y. Mar. 4, 2014)).[13]  "Although courts may exercise discretion in determining what constitutes reasonable attorneys' fees, 'the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case— creates a presumptively reasonable fee."  *Id.* (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (additional quotation marks omitted).

---

[13] As discussed in the Initial Report, relying on federal practice is permissible because in New York, "the touchstone for an award of attorneys' fees pursuant to a contract is reasonableness."  *CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013).  Additionally, "absent some overriding reason in policy or contrary state rulings, it is appropriate for federal courts to rely on federal practice in awarding fees under state substantive laws."  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 190 F. Supp. 2d 407, 418 (E.D.N.Y. 2002), *rev'd sub nom. on other grounds, Empire Healthchoice, Inc. v. Philip Morris USA, Inc.*, 393 F.3d 312 (2d Cir. 2004).

### a.    Hourly Rates

As displayed in the table below, Euro Pacific seeks reimbursement for the work of nine attorneys, three paralegals, one librarian, and one managing clerk. Supp. Graff Aff. ¶ 14.  The billing rates for the timekeepers range from $135 per hour for a librarian and a paralegal to $375 per hour for attorneys whose status is of counsel or shareholder.  Supp. Graff Aff. ¶ 17; Supp. Graff Aff. Ex. 1. at 20 ("Fee Summary").[14]  Euro Pacific contended in their objection that the hourly rates "are not only a substantial discount from ordinary billing rates for Anderson Kill P.C., but are also a substantial discount for attorneys practicing in New York City." Objection at 21; *see also* Supp. Graff Aff. ¶ 16 (affirming Anderson Kill charged lower rates than normal to Euro Pacific).  Annexed to Graff's supplemental affirmation are the biographies of the attorneys who worked on this matter.  Supp. Graff Aff. ¶ 15; Supp. Graff Aff. Ex. 2 ("Biographies").  Where the biographies do not include information about the years of an attorney's experience, I have taken judicial notice of the dates of their admission provided in the records of the New York State Unified Court System, which are publicly available on its web site.  *See, e.g.*, *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13-CV-6653 (GBD) (JLC), 2015 WL

---

[14] While Graff states that the rates range from $150 to $375 per hour, Euro Pacific's Fee Summary includes two timekeepers who billed at a rate of $135 per hour, paralegal Ryan Reckhow and librarian Esther Quiles.  Additionally, Graff states that the $375 rate is for "partners," but two of the attorneys who seek this rate are, according to their biographies, "of counsel" and one, Graff, was a "shareholder."

2250592, at *14 n.10 (S.D.N.Y. May 13, 2015) (taking judicial notice of dates of

admission provided by New York State Unified Court System).

| FEE SUMMARY | | | | |
|---|---|---|---|---|
| | | RATE | HOURS | TOTALS |
| Alexander Litt | Attorney | 250.00 | 237.70 | 59,425.00 |
| Christopher Ayers | Attorney | 250.00 | 113.50 | 28,375.00 |
| Christopher Paolino | Attorney | 250.00 | 42.70 | 10,675.00 |
| David Graff | Attorney | 375.00 | 28.80 | 10,800.00 |
| Donald Flynn | Managing Clerk | 245.00 | 2.50 | 612.50 |
| Esther Quiles | Librarian | 135.00 | 1.00 | 135.00 |
| Ethan W. Middlebrooks | Attorney | 295.00 | 16.10 | 4,749.50 |
| Harris E Gershman | Paralegal | 245.00 | 6.30 | 1,543.50 |
| Helen J Williamson | Attorney | 375.00 | 5.30 | 1,987.50 |
| Lawrence Kill | Attorney | 375.00 | 13.50 | 5,062.50 |
| Matthew J. Silverstein | Attorney | 250.00 | 38.80 | 9,700.00 |
| Nathan J Donlon | Paralegal | 275.00 | 6.00 | 1,650.00 |
| Rachael Kierych | Attorney | 250.00 | 1.60 | 400.00 |
| Ryan Reckhow | Paralegal | 245.00 | 2.50 | 612.50 |
| Ryan Reckhow | Paralegal | 135.00 | 6.30 | 850.50 |
| TOTAL FEES: | | | | 136,578.50 |

Euro Pacific seeks a rate of $375 for three attorneys: David Graff, Helen

Williamson, and Lawrence Kill.  Williamson and Kill are both of counsel at

Anderson Kill, have a focus in corporate and commercial litigation, and have been

practicing for more than 30 and 40 years, respectively.  Biographies at 3, 20.  Graff,

who was admitted to practice in New York in 2009 according to the New York State

Unified Court System, was a shareholder and co-chair of the firm's Corporate and

Commercial Litigation practice group, as well as the Foreign Investment Recovery

group.  *Id.* at 9.[15]  Euro Pacific seeks $250 for five other attorneys: Alexander Litt,

---

[15] After the Court directed the issuing of a revised Report and Recommendation, on
January 19, 2018, Graff entered a Notice of Change of Address indicating that he is

Christopher Paolino, Matthew Silverstein, Rachael Kierych, and Christopher Ayers.
Fee Summary.  Litt and Paolino both graduated in 2014, both concentrate in
corporate and commercial litigation, and are both members of the firm's Foreign
Investment Recovery group.  Biographies at 13, 17.  Kierych, who graduated in
2012, and Silverstein, who graduated in 2009, both concentrate in corporate and
commercial litigation and, according to their biographies, are also members of the
Foreign Investment Recovery group.  *Id.* at 5, 19.  Ayers, who graduated in 2007,
also concentrates in corporate and commercial litigation.  *Id.* at 1–2.  Euro Pacific
seeks a rate of $295 for Ethan Middlebrooks, an attorney who graduated in 2014
and concentrates in corporate and commercial litigation.  *Id.* at 15–16.

Regarding non-attorney timekeepers, Euro Pacific seeks a rate of $245 for
Donald Flynn, a managing clerk with 24 years of experience.  Objection at 22.
While, in its Objection, Euro Pacific states that it seeks a rate of $245 for paralegals
Nathan Donlon and Harris Gershman (12 and 25 years of experience respectively),
in its Fee Summary, Euro Pacific has billed for Donlon's time at a rate of $275 per
hour.  *Compare* Objection at 22; *with* Fee Summary.  Euro Pacific seeks two
different rates for paralegal Ryan Reckhow, $135 and $245 per hour, *see* Fee
Summary, and does not provide any information regarding Reckhow's expertise or

---

now an attorney at Robins Kaplan, LLP, and continues to serve as counsel of record
in this case.  Dkt. No. 64.  That same day, Rachael Kierych of Robins Kaplan LLP
(and formerly of Anderson Kill), as well as Sherli Furst, also of Robins Kaplan,
entered Notices of Appearance.  Dkt. Nos. 63, 65.  To date, Alexander Litt and
Christopher Ayers of Anderson Kill continue to be listed as attorneys to be noticed
by this District's Electronic Case Files ("ECF") system.

what justifies these two rates.  Euro Pacific also seeks a rate of $135 per hour for
Esther Quiles, a librarian.  *Id.*

"The reasonableness of hourly rates are guided by the market rate
'prevailing in the community for similar services by lawyers of reasonably
comparable skill, experience and reputation.'"  *Trs. of the N.Y.C. Dist.*, 2017 WL
2876644, at *5 (quoting *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund,
Welfare Fund, Annuity Fund v. Installations of Am., Inc.*, No. 15-CV-8316 (PAE),
2017 WL 384694, at *5 (S.D.N.Y. Jan. 27, 2017)) (alteration omitted).  "It is well-
established that the prevailing community a district court should consider to
determine the lodestar figure is normally 'the district in which the court sits.'"
*Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Polk
v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

"The applicant for an attorneys' fees award has the burden of producing
satisfactory evidence to demonstrate 'that the requested rates are in line with those
prevailing in the community.'"  *Bumble & Bumble, LLC v. Pro's Choice Beauty Care,
Inc.*, No. 14-CV-6911 (VEC) (JLC), 2016 WL 658310, at *8 (S.D.N.Y. Feb. 17, 2016),
(quoting *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984)), *adopted by*, 2016 WL
1717215 (S.D.N.Y. Apr. 27, 2016).  The Court may also rely on its own familiarity
with prevailing rates in its district to determine a reasonable rate.  *See, e.g.,
Townsend v. Benjamin Enters.,* 679 F.3d 41, 59 (2d Cir. 2012); *Miele v. New York
State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987).

I recommend approval of the attorneys' requested rates, with a modification to the rate of one attorney timekeeper as discussed below.  Euro Pacific seeks rates of $375 for attorneys with 30 to 40 years' experience, and $250 for attorneys with one to eight years' experience at the time the action was commenced.  These rates are within the reasonable range of rates for comparably experienced attorneys performing similar work.  *See, e.g.*, *Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc.,* No. 15-CV-5981 (LGS) (DF), 2016 WL 8674686, at *7–8 (S.D.N.Y. May 13, 2016) (finding hourly rate of $300 to $310 reasonable for attorneys who had graduated at least 12 years prior to beginning work on breach-of-contract action), *adopted by*, 2016 WL 3566237 (S.D.N.Y. June 27, 2016); *Tabatznik v. Turner,* No. 14-CV-8135 (JFK), 2016 WL 1267792, at *11 (S.D.N.Y. Mar. 30, 2016) (approving partner rate of $650 per hour and associate rate of $425 per hour, in action to enforce promissory note); *Rubenstein v. Advanced Equities, Inc.,* No. 13-CV-1502 (PGG), 2015 WL 585561, at *6-7 (S.D.N.Y. Feb. 10, 2015) (finding hourly rate of $525 reasonable for partners with between 20 and 30 years' experience and "blended" rate of $350 reasonable for associates with experience ranging from one to nine years); *Nautilus Neurosciences, Inc. v. Fares*, No. 13-CV-1078 (SAS), 2014 WL 1492481, at *3 (S.D.N.Y. Apr. 16, 2014) (finding hourly rate of $603 and $337.50 reasonable for partner practicing for almost 30 years and associate practicing less than three years in action to enforce promissory note).  While Graff had been practicing for only six years when the action was commenced, his role as co-chair of the firm's Corporate and Commercial Litigation practice and his chairing of the

firm's Foreign Investment Recovery group suggest a level of responsibility that justifies a $375 hourly rate.  The only rate that requires adjustment is that of Middlebrooks, who graduated just a year prior to the filing of the action but is seeking $295 per hour, $45 more per hour than his colleagues with between one to eight years' of experience.  Euro Pacific has not submitted any information that would justify a higher rate for Middlebrooks, and therefore his rate should be adjusted to $250 per hour.

The support staff rates require adjustment.  Fee awards in this District generally provide for rates significantly lower than the $245 per hour sought for managing clerk Flynn and paralegal Gershman, and the $275 per hour sought for Donlon.  In its Objection, Euro Pacific acknowledges that I questioned the support staff rates in my Initial Report and yet, in its supplemental submissions, Euro Pacific renews its request for relatively high rates but does not offer a sufficient justification.  Instead, it makes a boilerplate statement and cites cases that do not support the requested rates: "[t]hese hourly rates are justified compared to the market rate in this district due to the experience and or the ability of each timekeeper."  Objection at 22 (citing *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361 (S.D.N.Y. 2010); *Three60 LLC vs. Local Ocean Holdings, LLC*, Index No. 652188/12, 2014 N.Y. Misc. LEXIS 5819, *1 (N.Y. Sup. Ct. Feb. 20, 2014); *Kovach v. City Univ. of New York*, No. 13-CV-7198 (LGS), 2015 WL 3540798, at *6 (S.D.N.Y. June 4, 2015).  However, these cases fail to support the argument that the requested rates are in line with those prevailing in the community.  *See Malletier,*

687 F. Supp. 2d at 362 (reducing paralegal rates to $100), *Three60 LLC*, 2014 N.Y.

Misc. LEXIS 5819, *10–11 (not analyzing paralegal rates at all); *Kovach*, 2015 WL

3540798, at *4–6 (same).  The only authority Euro Pacific provides in support of the

$245 rate, *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255 (KMW), 2014

WL 2781846, at *6 (S.D.N.Y. June 19, 2014), appears to be an outlier in this District

and, even then, only approves a $200 rate.

    While the Court recognizes the experience that Donlon, Flynn, and

Gershman bring with their 12, 24, and 25 years of experience, respectively, the

rates they seek are beyond those that are typically awarded in this District for work

performed by staff members in a comparable position.  *See, e.g.*, *Wells Fargo Bank,*

*N.A. v. Bivona & Cohen, P.C.*, No. 12-CV-5212 (RA) (GWG), 2016 WL 2745847, at

*11 (S.D.N.Y. May 11, 2016) (finding $75 per hour rate previously found

appropriate for paralegal also appropriate for managing clerk), *adopted by*, 2016

WL 3098843 (S.D.N.Y. June 1, 2016); *TufAmerica Inc. v. Diamond*, No. 12-CV-3529

(AJN), 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016) (adjusting requested fees of

$255.51 for a paralegal, $202.80 for a managing clerk, and $206.85 for a litigation

support specialist to $175 for paralegal and $150 for managing clerk and litigation

support specialist), *reconsideration granted in part on other grounds*, 2016 WL

3866578 (S.D.N.Y. July 12, 2016); *cf. Castcapa Constr., LLC v. TMB Servs. Ltd.*

*Liab. Co.*, No. 17-CV-1023 (NGG) (SJB), 2018 WL 623546, at *4 (E.D.N.Y. Jan. 30,

2018) (finding $125 hourly rate unreasonable for managing clerk/paralegal with 19

years of experience and reducing hourly rate to $100).  Indeed, "[r]ecent cases in

this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour." *TufAmerica Inc.*, 2016 WL 1029553, at *6.  Accordingly, the paralegal rates and managing clerk rates should be reduced to $150 per hour, except for the lower of the two hourly rates requested for Reckhow.  While Euro Pacific has provided no information about Reckhow's experience, the lower of the two rates he billed, $135 per hour, is within the range of prevailing rates and need not be adjusted.

Euro Pacific has also failed to provide evidence of the standard hourly rates for individuals holding Quiles' title of "librarian."  Nevertheless, the Court finds the hourly rate of $135 is appropriate given that it is roughly equivalent to or less than rates approved for librarians by other courts in this District.  *See, e.g.*, *Sprint Commc'ns v. Chong*, No. 13-CV-3846 (RA), 2014 WL 6611484, at *8 (S.D.N.Y. Nov. 21, 2014) (approving $180/hour for librarian); *Sidley Holding Corp. v. Ruderman*, No. 08-CV-2513 (WHP) (MHD), 2009 WL 6047187, at *27 (S.D.N.Y. Dec. 30, 2009) (approving $125/hour for librarian assisting in research), *adopted by*, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010).

### b.    Hours Expended

Annexed to Graff's supplemental affirmation as Exhibit 1 are "true and correct copies of Anderson Kill P.C. time records" for fees incurred from March 20, 2015 to January 31, 2017.  Supp. Graff Aff. ¶¶ 13, 18. Euro Pacific seeks reimbursement for 498 hours of attorney time and 24.6 non-attorney hours.  Fee Summary.  Euro Pacific contends that the hours expended are reasonable in light of

the substantial work conducted in this matter, and points specifically to the

complexity of the transaction documents, preparation for and participation in a

mediation, drafting an opposition to a motion to dismiss that raised multiple legal

issues, and the creation of a damages model in conjunction with the put option

sought in the initial inquest.  Supp. Graff Aff. ¶ 8–12.

"As evidence that the number of attorney hours are reasonable, 'the fee

application must be supported by contemporaneous time records that specify, for

each attorney, the date, the hours expended, and the nature of the work done.'"  *Trs.*

*of the N.Y.C. Dist.*, 2017 WL 2876644, at *5 (quoting *1199/SEIU United*, 2014 WL

840965, at *10) (additional quotation marks omitted).  "[I]f a court finds that

claimed hours are 'excessive, redundant, or otherwise unnecessary,' it should

exclude those hours from its calculation of the presumptively reasonable fee."

*Guaman v. J & C Top Fashion, Inc.*, No. 14-CV-8143 (GBD) (GWG), 2016 WL

791230, at *8 (S.D.N.Y. Feb. 22, 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424,

434 (1983)), *adopted by*, 2017 WL 111737 (S.D.N.Y. Jan. 11, 2017)); *see also, e.g.*,

*N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-CV-

1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016).

"In determining whether a reasonable amount of time was expended on a

matter, the Court may consider, *inter alia,* the nature and quality of the work

submitted by counsel in connection with the litigation . . . as well as the degree of

counsel's success."  *Bank of Am.*, 2016 WL 8674686, at *8 (citing *Kirsch v. Fleet St.*

*Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.,* 818

F.2d 226, 232 (2d Cir. 1987), *Hensley,* 461 U.S. at 436–37 (holding that there is "no precise rule or formula" for reducing fee award and that courts have discretion to either eliminate specific hours or reduce lodestar to account for limited success)). Courts have reduced fees where the counsel seeking fees submitted documents that contained multiple errors or were generally of poor quality.  *See, e.g.*, *Poparic v. European Music & Video Store,* No. 08-CV-2081 (KAM) (JO), 2009 WL 6318212 at *9 (E.D.N.Y. Dec. 16, 2009) (finding "sub-par quality of the legal work" warranted reduced hourly rate).  "Other factors that a court should consider include the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved." *Bank of Am.*, 2016 WL 8674686, at *8 (quotation marks omitted).

The documentation submitted by Anderson Kill following my Initial Recommendation "appears to be adequate, reflecting contemporaneous record-keeping with the requisite details about the work done."  *Nat'l Photo*, 2014 WL 1396543, at *6.  Several considerations justify Euro Pacific's expenditure of more hours than are typically expended by plaintiffs seeking an inquest into damages, including the complexity of the transaction documents, preparation for and attendance at a mediation, dispositive motion practice, and the nearly two years that Anderson Kill attorneys worked on this case prior to filing their inquest submissions.

However, for the reasons discussed in the Initial Report and incorporated by reference herein, the award should be reduced by 20%. *See Euro Pac. Capital, Inc.*, 2017 WL 3208036, at *13 (finding quality of work product did not correspond with the fees sought and listing examples); *see also, e.g., Gordon v. Site 16/17 Dev., LLC*, No. 11-CV-427 (RMB) (AJP), 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011) (reduction of fee award by 20% justified where, *inter alia*, documents submitted were of mediocre quality and included numerous errors) (collecting cases). As described in the Initial Report, Euro Pacific's initial inquest submissions contained multiple errors, included text that appeared to have been "cut and pasted" from another case, sought a remedy that was unavailable under law, failed to provide sufficient evidence to establish breach of contract damages with reasonable certainty, and failed to establish that the requested attorneys' fees and costs were reasonable, thus necessitating the issuing of two separate report and recommendations. *See also,* October 26 Order, at 5–6 ("Euro Pacific failed to submit sufficient evidence in the form of detailed affidavits and other documentary materials to enable the district court to establish damages with reasonable certainty . . . . Given the record presented to Magistrate Judge Cott at the time of the inquest into damages, the Court would have ample reason to deny Euro Pacific's Objections to the Report.") (quotation marks omitted).

Therefore, as displayed in the table below, accounting for the adjustments to hourly rates and reducing the fee award by 20%, Euro Pacific is entitled to $107,194.40 in attorneys' fees.

| Modified Fee Summary | | | | | |
|---|---|---|---|---|---|
| **Timekeeper** | **Title** | **Rate** | **Hours** | | **Totals** |
| Alexander Litt | Attorney | 250 | 237.7 | $ | 59,425.00 |
| Christopher Ayers | Attorney | 250 | 113.5 | $ | 28,375.00 |
| Christopher Paolino | Attorney | 250 | 42.7 | $ | 10,675.00 |
| David Graff | Shareholder | 375 | 28.8 | $ | 10,800.00 |
| Donald Flynn | Managing Clerk | 150 | 2.5 | $ | 375.00 |
| Esther Quiles | Librarian | 135 | 1 | $ | 135.00 |
| Ethan Middlebrooks | Attorney | 250 | 16.1 | $ | 4,025.00 |
| Harris Gershman | Paralegal | 150 | 6.3 | $ | 945.00 |
| Helen Williamson | Of Counsel | 375 | 5.3 | $ | 1,987.50 |
| Lawrence Kill | Of Counsel | 375 | 13.5 | $ | 5,062.50 |
| Matthew Silverstein | Attorney | 250 | 38.8 | $ | 9,700.00 |
| Nathan Donlon | Paralegal | 150 | 6 | $ | 900.00 |
| Rachael Kierych | Attorney | 250 | 1.6 | $ | 400.00 |
| Ryan Reckhow | Paralegal | 135 | 8.8 | $ | 1,188.00 |
| | Subtotal after rate modification | | | $ | 133,993.00 |
| | **Total after 20% reduction** | | | **$** | **107,194.40** |

3.  **Costs**

Euro Pacific seeks $9,793.87 in costs it incurred, including regarding legal research, mediation, filing fees, local travel, meals, shipping costs, photocopying, and service.  Objection at 23; Supp. Graff Aff. Ex. 1 at 30.  Euro Pacific has provided, according to Graff's affirmation, "true and correct copies" of the Anderson Kill's records of costs "incurred from March 20, 2015 to January 31, 2017."  Supp. Graff Aff. ¶¶ 13, 18.  The records are dated and itemized.  Supp. Graff Aff. Ex. 1 at 20–30.

"Fee awards normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients."  *Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. B&L Moving & Installation, Inc.*, No. 16-CV-4734 (GBD) (JLC), 2017 WL 4277175,

at *8 (S.D.N.Y. Sept. 26, 2017) (quotation marks omitted).  "As with attorneys' fees, the requesting party must substantiate the request for costs."  *Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); *see also*, *e.g.*, *Euceda v. Preesha Operating Corp.*, No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs . . . . Plaintiff has failed to provide any substantiation, such as invoices or receipts, documenting the costs he now seeks to recover."), *adopted by*, 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

These costs are reasonable, documented, and would ordinarily have been charged to the client, and therefore Euro Pacific's request should be granted in full. *See, e.g.*, *Bank of Am*, 2016 WL 8674686, at *11 (awarding "routinely recoverable" costs for shipping, filing fees, process servers, and litigation support); *Rubenstein*, 2015 WL 585561, at *9 (awarding "properly included" costs for court fees, filing fees, legal research expenses, attorney travel expenses, and printing and binding fees); *Nautilus*, 2014 WL 1492481, at *4 (awarding court fees, administrative fees, photocopying, and legal research costs).   While further documentation "would have been preferable, the Court accepts [Graff's] attestation" and Anderson Kill's records as to the costs incurred.  *Nat'l Photo*, 2014 WL 1396543, at *6.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court grant Euro Pacific's request for $6,843,549 in damages, as well as prejudgment interest on that award at a rate of 9% per annum beginning April 5, 2016 and continuing until the date of

entry of judgment.  I also recommend that Euro Pacific be awarded $107,194.40 in attorneys' fees, and $9,793.87 in costs.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Marrero.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  March 9, 2018
   New York, New York

JAMES L. COTT
United States Magistrate Judge

29